THE BOARD OF TRADE TELEGRAPH COMPANY

*v.*

HENRY L. BLUME *et al.*

*Opinion filed October 24, 1898—Rehearing denied December 13, 1898.*

1. EMINENT DOMAIN—*jury's verdict on conflicting evidence is entitled to great weight.* A condemnation award within the range of conflicting oral testimony will not be disturbed on appeal, in the absence of errors of law.

2. TRIAL—*party should obtain court's ruling on alleged incompetent answer by witness.* One desiring the Supreme Court to pass upon the competency of part of a witness' answer to a question not objected to, should obtain the trial court's ruling by moving to strike out the objectionable matter, or otherwise.

3. APPEALS AND ERRORS—*one cannot object to evidence he has himself called out.* One obtaining a fairly responsive answer to a question put by him upon cross-examination cannot object to its competency as evidence.

4. ROADS AND BRIDGES—*section 7 of Road and Bridge act construed.* Section 7 of the Road and Bridge act (Laws of 1883, p. 138,) does not make willow trees in a public highway necessarily a nuisance, but is directed against willow hedges and lines of cottonwood trees planted along the margin of the highway so as to prevent its being properly tiled.

PHILLIPS, J., dissenting.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM P. EARLY, Judge, presiding.

FRANK J. LOESCH, E. C. SPRINGER, and W. P. BRADSHAW, for appellant.

TRAVOUS & WARNOCK, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a proceeding to condemn lands for the use of a telegraph company, instituted in the county court of Madison county. The petition as originally filed was in the name of the Postal Telegraph-Cable Company, and sought to condemn a strip of land six feet wide along

the entire front of defendants' lands on what is known as the Hillsboro road. Prior to the hearing the petition was amended by substituting the name of appellant, the Board of Trade Telegraph Company, and asking for strips of land two feet wide by six feet long at each telegraph pole then standing, together with the right to erect cross-arms, insulators, etc., and to string and maintain wires upon the same, along said entire six-foot strip.

Upon looking into the evidence it appears that ten poles are to be erected and maintained along the land of defendant Blume, seventeen on land of defendants Fred Kording and Amelia Redeker, twenty-one on land of the Mize heirs, five on land of Martha Blackburn, twelve on land of Thomas W. Morrison, nine on land of Henry A. Eaton, fifteen on land of Daniel Stubbs, twelve on land of Isaac A. Davis, and nine on land of Anson Barnett. Much evidence was introduced by the respective parties in regard to the value of the land taken and the damages to land not taken, and the jury returned a verdict fixing the amount due the defendants, as follows:

| OWNER. | Value of land taken. | Damages to contiguous lands. |
|---|---|---|
| Henry L. Blume | $ .25 | $ 40.00 |
| Fred Kording and Amelia Redeker | .40 | 118.00 |
| Nancy J. Mize, Sarah E. Mize, Robert M. Mize, Hanlan M. Mize, Edith E. Mize, Roy A. Mize and Wilbur R. Mize | .50 | 84.00 |
| Thomas W. Morrison | .30 | 50.00 |
| Henry A. Eaton | .20 | 36.00 |
| Daniel Stubbs | .35 | 60.00 |
| Isaac A. Davis | .30 | 50.00 |
| Anson Barnett | .20 | 36.00 |
| Martha Blackburn | .15 | 28.15 |

It is claimed in the argument that the evidence does not sustain the verdict. In a case of this character, where the amount of the damages has to be determined by the opinions of witnesses, there is always a conflict in the evidence. This case was not an exception to the rule. Eighteen witnesses who were familiar with the lands and the location of the telegraph line testified for the defendants, placing the damages much higher than the jury allowed. On the other hand, six witnesses or more

were called by the petitioner, who testified that in their opinion the lands of the defendants would not be damaged by the construction and operation of the telegraph line. Where there is such a conflict in the evidence, under the uniform decisions of this court the verdict of the jury will not be disturbed unless it appears that the court has erred on questions of law to the prejudice of the appealing party against whom a judgment was recovered.

It is, however, contended that the court admitted improper evidence, and that upon this ground the judgment should be reversed. Under this head it is said in the argument the trial judge permitted evidence of the following character to go to the jury over the objection of appellant:

Edward Barnett testified: "According to the law that has been established lately, we can extend our fences out and take in thirteen feet more of ground along the road, and if you do that you have got your poles in your field about ten or twelve feet, which makes it very inconvenient in farming."

C. P. Smith testified: "I have learned something here to-day about the law that I didn't know before: that a farmer anywhere can claim, for instance a road is sixty-six feet wide, a farmer can claim thirteen feet outside of the present line. That would cut quite a figure, and if these poles are setting near the line and a farmer claims that strip, it makes it more objectionable on account of it being in the field than if the poles are setting on the line. If one had to work clear around the poles that is quite a nuisance, and I would consider the damages under this light at $10 per pole."

Edward L. Gillham testified: "I think the damages from the inconvenience of all and any telegraph poles along land that is farmed is at least $7 per pole, and if on account of, as Mr. Smith spoke of, the land would be abandoned, the road narrowed, it would be at least $12 a pole. Should the road be abandoned it would be greater

on account of having to cultivate around them, and be·
cause farmers would remove their fences."

Edward L. Fahnestock testified: "In the first place,
the road will not continue that way. The time will come
when they will take the road away and farm that land.
You have got the poles there and you have got to con-
tend with these poles. You have got to work around
them. You have got to cut your wheat around them; and
if they abandon the road it goes to the man that culti-
vates next to it."

H. A. Eaton testified: "If any part of the highway
was abandoned, so that the land would reach out into
the public highway beyond the poles as now located,
they would be a damage."

Upon referring to the abstract it will be found the
first witness, Barnett, whose testimony is complained of,
testified to the amount of damages which in his judg-
ment would result to the lands by the construction and
operation of the telegraph line. He was then asked the
following question: "State to the jury what elements
you have considered in arriving at your conclusion as to
how much these poles depreciate the value of the prop-
erty." No objection was made to this question, so far as
is shown, and we can conceive of no well-founded objec-
tion that could have been made to it. The witness, how-
ever, in answer to the question, after detailing various
things growing out of the construction of the telegraph
line which in his opinion would damage the property,
stated the fact in regard to the right of the property
owner to extend his fence and take in thirteen feet of
the road. If this part of the answer of the witness to
the question propounded to him was incompetent, if ap-
pellants' counsel desired to preserve an exception to the
evidence he ought to have moved the court to strike out
that portion of the answer which was not competent.
But that was not done, and so far as appears the court
did not pass upon the competency of the evidence. Under

such circumstances no question in regard to the admissibility of the evidence is presented by the record.

In regard to the objection to the evidence of the witness Smith, he was asked this question: "State in a general way what damages, if any, it would be to these lands, in their market value, to construct this line as proposed in this petition." No objection was interposed to the question, and the witness gave the answer heretofore set out, without any objection being made to his evidence from any quarter; but after the witness had concluded his evidence we find in the record the following: "All the foregoing evidence was objected to; objection overruled and exception taken." When the witness commenced to answer the question, if appellant desired to call in question the admissibility of his evidence he ought to have objected to it and obtained a ruling of the court upon it, or if the witness answered before appellant had an opportunity to object, a motion to exclude the evidence should have been made. Had the course indicated been pursued appellant would have been in a position to complain, but as the record stands no question has been preserved to the ruling of the court on the evidence.

What has been said in regard to the objection to the evidence of the witness Smith also applies to the objection to the evidence of the witness Gillham.

As to the objection to the evidence of Fahnestock and Eaton, it will be found upon examination of the record that the evidence objected to in the argument was called out on cross-examination. Appellant having called out the evidence cannot object to its competency.

It is also insisted that the court erred in giving defendants' last instruction. It is said that the instruction is erroneous because it assumes that there are damages outside of the evidence given, and that it is further objectionable because it tells the jury to take into consideration all facts which contribute to produce damages, without limiting them to the evidence. We do not think

that the instruction, when closely examined, assumes that there are damages either within or outside of the evidence. It merely directs the jury that in assessing the damages to the owners of land they are justified in taking into consideration the value of land actually taken and all facts which tend to produce damage to the lands not taken. The instruction may be slightly inaccurate in not in express terms limiting the jury to the facts as found in the evidence, but in the instruction preceding the one complained of the court directed the jury in such plain terms that they must be controlled and guided by the evidence, and the evidence alone, that they could not have been misled by the instruction complained of. That instruction declares that the jury are required to ascertain and report compensation and damages to lands taken and damaged, if any, "according to the facts in the case as the same may be made to appear from the evidence, and that you have no right arbitrarily to disregard or ignore the evidence introduced before you and fix the compensation or damages contrary to the evidence, but you should consider and be guided by the facts and the evidence in the case in fixing such compensation and damages."

The court refused an instruction on behalf of the petitioner which was as follows:

"The court instructs the jury that willow trees in the public highway are declared by the statutes of this State to be a nuisance."

Section 7 of the Road law (Starr & Curtis, p. 2138,) provides: "Where willow hedges, or a line of willow or cottonwood trees, have been planted along the margin of the road so as to render tiling impracticable, the commissioners may contract with the owner for their destruction, and they shall be destroyed before tiling. The planting of these trees hereafter on the margin of roads is hereby declared a public nuisance, unless the same are planted by the consent of the commissioners." It is

claimed that the instruction was authorized by this section of the statute. This statute does not make willow trees in a highway necessarily a nuisance, but the statute is only aimed against willow hedges or a line of cottonwood trees planted along the margin of the highway so as to prevent tiling the highway. It is therefore apparent that the instruction was erroneous and properly refused.

We find no substantial error in the record, and the judgment will be affirmed.     *Judgment affirmed.*

Mr. JUSTICE PHILLIPS, dissenting.