James McCulloch, Defendant in Error, *vs.* The Illinois Steel Company, Plaintiff in Error.

*Opinion filed December 22, 1909—Rehearing denied Feb. 2, 1910.*

1. Trial—*when a peremptory instruction is properly refused.* Instructions requiring the jury to disregard each of the three counts of the declaration are properly refused where there is evidence in the record tending to support each count.

2. Appeals and errors—*amount of damages sustained by negligent act is a question of fact.* The amount of damages sustained by reason of a negligent act is a question of fact for the jury and is finally settled by the judgment of the Appellate Court.

3. Same—*fact that judgment is large does not require a more careful examination of record.* The mere fact that the judgment recovered in a personal injury case is large does not call for a more careful examination of the record for errors than if it were for a less amount.

4. The court reviews the evidence in this case at length, and holds that the questions of the plaintiff's negligence, of assumed risk and the existence of the relation of fellow-servants were questions of fact properly submitted to the jury.

Writ of Error to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. Dorrance Dibell, Judge, presiding.

Garnsey & Wood, and William Beye, (Knapp & Campbell, of counsel,) for plaintiff in error.

John W. D'Arcy, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

This is an action on the case brought by defendant in error against plaintiff in error, in the circuit court of Will county, to recover damages for personal injuries sustained by him while employed in the steel mill of plaintiff in error at Joliet, Illinois.

When the case was finally submitted to the jury the declaration contained three counts. The first count set up the ownership of the plant and buildings and charged negligence on the part of plaintiff in error in the operation and use of its premises, machinery and appliances, so that a large quantity of molten iron was permitted to escape from a "mixer" and fall upon defendant in error. The third count charged that plaintiff in error overloaded the mixer and poured an excessive amount of metal into it from the ladle. The fourth count charged that the craneman operating the crane attached to the ladle was unskilled, incompetent and inexperienced, and that by reason of his lack of skill he caused too large a quantity of molten iron to be passed into the mixer from the ladle. Each count charged that defendant in error was in the exercise of reasonable care, and set out that he had no notice, knowledge or warning that metal would escape from the mixer, and that the injury did not result from an assumed risk or the negligence of a fellow-servant.

At the close of defendant in error's evidence, and again at the close of all the evidence, plaintiff in error moved to instruct the jury to find it not guilty under each of the three counts in question. These instructions were refused. The jury returned a verdict of guilty and assessed damages in favor of defendant in error. Motion for new trial was overruled and judgment entered on the verdict. On appeal to the Appellate Court that judgment was affirmed. The case is brought here by writ of error for further review.

243 — 30

The accident occurred on April 18, 1907, in what is called the "mixer mill" of plaintiff in error's plant. This is a building about sixty feet broad, from sixty to seventy feet high and about two hundred and fifty feet in length, built of steel and corrugated iron. The main floor is of concrete, about fifteen feet above the ground level, and on it are laid two sets of ordinary standard gauge railroad tracks. The western half of the building is occupied by the mixers themselves, two in number. These vessels will hold about two hundred and fifty tons of metal each, being somewhat cylindrical in shape. Their longer axis is about twenty feet. They are nearly the same in width and about fifteen feet deep. They are covered and lined with fire brick, the only openings being an aperture at the top into which the metal is poured, and a nose or spout at the other end out of which to pour the molten iron as needed. The mixers stand side by side, with a space of about eight feet between them. They are mounted on rollers, which rest on a semi-circular bed, and can be revolved for the purpose of pouring, the nose lowering as they are tipped. Surrounding the south side of the mixers is a floor ten or twelve feet above the main floor, which is made of iron plates and stands about four feet below the normal level of the noses, being cut out around the noses of the mixers to permit their being lowered. In the mixer mill are two traveling cranes operated by electricity, which are used to hoist the ladles of molten iron and pour the metal into the mixers. The office of the mixers is to permit iron from different blast furnaces, which is afterwards to be converted into steel in the adjoining building, to be mixed so that its quality may be uniform. The metal is brought from the blast furnaces in cup-shaped ladles provided with a spout, holding from 25,000 to 30,000 pounds each. They are mounted on trucks and run on railroad tracks on the main floor. When it is desired to pour the metal into the mixer the ladle is raised from the trucks by one of the

cranes. When the metal is to be taken from the mixers to the steel mill department a ladle, called a "transfer ladle," is brought from the adjoining building upon a track which runs underneath the noses of the mixers and underneath the iron floor. This ladle is ordinarily operated by means of a cable running along the center of the track over which it travels. At the time of the accident the defendant in error had charge of the repair of machinery as master mechanic in the department in question under a general master mechanic, but had nothing to do with the operating of the department. Herbert W. Spencer was the general superintendent and John D. Wombacher the assistant superintendent of that department, the latter having charge and being present directing the operation of the department at the time of the accident. On that day the cable broke about the middle of the forenoon and word was sent to the mechanical department. The defendant in error proceeded with a gang of men to make the necessary repairs. Most of the work in repairing the cable was done on the concrete floor directly under the nose of the east mixer, the testimony showing that this was the usual and proper place for repairing this cable. While the work was being done the metal in the west mixer was being taken out by the transfer ladle, pushed by men, as the cable which moved this ladle was the one being repaired, the mechanics having to step aside while it went by. It passed back and forth each way about eight times an hour. The west crane at this time was being operated by one Joseph Juver, a regular craneman. When the repairing of the cable had been nearly completed the craneman picked up a ladle containing about 15,000 pounds of metal, which had become cooled and crusted over on top, and started to pour the iron into the east mixer, when the crust broke and a large amount of molten metal fell from the ladle into the mixer, thereby causing some of the iron to splash out of the nose of the mixer and fall upon defendant in error, who was at that

time engaged in the line of his duty, under the nose of the mixer, in repairing the cable. He was very seriously and permanently injured.

It is clear from the evidence that defendant in error had nothing whatever to do with operating the plant or the mixer mill and that he had no authority over the employees engaged in operating it; that he never gave orders to Spencer's or Wombacher's men and never received orders from Spencer or Wombacher. It appears that whenever the defendant in error thought it necessary to make repairs he could order parts of the plant shut down, and it is most earnestly argued by the plaintiff in error that he could have ordered the crane which was being operated at the time of the accident, to cease its operations during the time of the repair of the cable. The evidence was clear that it was not an unusual occurrence for this cable to require repairs and that the work of repair was always done under the nose of the east mixer. The evidence is also uncontroverted that during ten or fifteen years previous, metal had never been known to splash or slop out of the mixer and drop on the floor below when it was being filled from the ladles. Defendant in error had been engaged in repairing the cable about two hours when he was injured. During this time Wombacher had charge of this department and had himself directed the moving of the transfer ladle from the west mixer along the railroad track under the spout of the east mixer some sixteen times. It appears also that Wombacher had directed one Carter, who was superior to Juver, that the east mixer should not be used while the cable was being repaired but that Carter neglected to give the instructions to Juver. Juver testified that he did not know the mechanics were working under the east mixer or he would not have poured the metal into it, but that he did know the cable was being repaired. There was evidence tending to show that the east mixer, before Juver attempted to pour in the last ladle, was as full as

was considered safe. Juver, the craneman, insisted that there was ample room to pour in the amount that he did. The testimony tends to show that when he had poured out about half from the ladle he moved the ladle by the crane over to the west mixer and poured the rest of the metal into that. Several witnesses also testified that the craneman, Juver, was careless or incompetent in the work, and it seems that Wombacher, the assistant superintendent, had heard complaints about him, as had also Spencer, the general superintendent. On this state of the record we do not think this court can find, as a matter of law, that defendant in error was negligent in not ordering the crane in question not to be used during the time he was repairing the cable. This was a question of fact to be submitted to the jury under proper instructions. *Illinois Steel Co.* v. *Olste,* 214 Ill. 181; *Riedel* v. *Chicago, Rock Island and Pacific Railway Co.* 239 id. 362.

Plaintiff in error contends, also, that in this case defendant in error assumed the risk; that it was a risk ordinarily incident to the business in which he was engaged. "An employee assumes the risks of known dangers and such as are so obvious that knowledge of their existence is fairly to be presumed, but the law does not imply he has notice of dangers or perils not obvious to the senses and arising solely out of extraordinary or exceptional circumstances." (*Pittsburg Bridge Co.* v. *Walker,* 170 Ill. 550.) "The master is bound to exercise care and prudence to prevent his employees from being exposed to unreasonable risks or dangers. The employee has a right to presume that the master will exercise such diligence in protecting him from injury." (*Himrod Coal Co.* v. *Clark,* 197 Ill. 514; *City of LaSalle* v. *Kostka,* 190 id. 130.) From the evidence heretofore set out it is manifest that the injury in question was not caused by the incidental risks and hazards that were ordinarily connected with the employment of the defendant in error. In this case the question of as-

sumed risk was one of fact for the jury. *Illinois Steel Co. v. Bauman,* 178 Ill. 351; *Chicago and Alton Railroad Co. v. Wise,* 206 id. 453; *City of LaSalle v. Kostka, supra; Swiercz v. Illinois Steel Co.* 231 Ill. 456; *Superior Coal and Mining Co. v. Kaiser,* 229 id. 29.

It is further urged that the defendant in error was a fellow-servant of the craneman, Juver, and for that reason he cannot recover. The question of fellow-servant in this case was one of fact for the jury. *Gathman v. City of Chicago,* 236 Ill. 9.

There was evidence in the record tending to support each of the three counts upon which the case was submitted to the jury. The peremptory instructions asked, to the effect that the jury should disregard each of these three counts, were therefore properly refused. *Libby, McNeill & Libby v. Cook,* 222 Ill. 206; *O'Leary v. Chicago City Railway Co.* 235 id. 187; *Lake Shore and Michigan Southern Railway Co. v. O'Conner,* 115 id. 254; *Clark v. Chicago, Rock Island and Pacific Railway Co.* 231 id. 549.

It is further urged that the verdict is excessive, and the argument is made that while this court does not have the power to order a *remittitur,* yet it is the duty of the court of last resort to look more carefully into the record as to errors than if the verdict were not so large. Counsel for plaintiff in error have cited no authority in support of this contention and we know of no rule of law to that effect. It has been so many times decided by this court that the amount of damages sustained by reason of a negligent act or omission is a question of fact for the jury, which is finally settled by the judgment of the Appellate Court, that it seems an unnecessary repetition to cite cases in support of this rule of law. *Smith v. Chicago, Peoria and St. Louis Railway Co.* 236 Ill. 369; *West Chicago Railroad Co. v. Bode,* 150 id. 396.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*