(No. 26803.— ▮▮▮▮▮▮▮▮▮▮)

BESS GOLDBERG, Appellee, *vs.* CAPITOL FREIGHT LINES, LTD., *et al.*—(BLUEBIRD SYSTEM, INC., *et al.*, Appellants.)

*Opinion filed January 21, 1943—Rehearing denied March 10, 1943.*

284

HINSHAW & CULBERTSON, EDWIN S. D. BUTTERFIELD, and OSWELL G. TREADWAY, of counsel,) for appellants.

RYAN, SINNOTT & MILLER, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Bess Goldberg, filed a complaint in the superior court of Cook county against the defendants, Capitol Freight Lines, Ltd., Lloyd Gisinger, Arthur J. Gisinger, Bluebird System, Inc., and Bluebird Coach Lines, Inc., to recover damages for personal injuries. The court reserved rulings on defendants' motions, made at the close of plaintiff's evidence, and, also, at the close of all the evidence, to direct a verdict in their favor. On plaintiff's motion, after the trial was in progress, Lloyd Gisinger and Arthur J. Gisinger, defendants, were dismissed from the case. The jury returned a verdict of $85,000 in favor of plaintiff and against the three remaining defendants. Defendants' motions for a directed verdict were then denied. The trial court, upon plaintiff's remittitur of $25,000, entered judgment for $60,000. The Appellate Court for the

First District affirmed the judgment. (*Goldberg* v. *Capitol Freight Lines, Ltd.* 314 Ill. App. 352.) A petition for leave to appeal by Bluebird System, Inc., and Bluebird Coach Lines, Inc., has been allowed.

Plaintiff, twenty-two years old, sustained serious injuries on the morning of May 17, 1939, arising out of a collision between a tractor truck belonging to Capitol Freight Lines, Ltd., and a bus owned by appealing defendants, at the intersection of Ogden and Homan avenues, in Chicago. Ogden avenue is a diagonal through street, 110 feet wide. It runs northeasterly and southwesterly and has a double set of car tracks in the center, flanked on either side by spaces for vehicular traffic. "Slow Danger" signs and safety islands are located east and west of Homan avenue, which is a north and south street. Plaintiff, employed as a stenographer in the "Loop" district, intended to board a northeast-bound Ogden avenue car, and, prior to the accident, was proceeding south in the west crosswalk of Homan avenue. She stopped at the north curb of Ogden avenue, looked both ways, and, according to her testimony, saw defendants' bus, a block east, at Christiana avenue, coming southwest, preceded a half block by a passenger car. The automobile was to the north of the bus. The bus was about 10 feet north of the southwest-bound street-car tracks. The distance southwardly from the north curb to the nearest street-car rail was approximately 50 feet. Plaintiff testified that she looked to the south as she walked across, and kept glancing to the east; that she passed the line of travel of the passenger car; and that when she had traversed half the distance to the north rail of the southwest-bound track, a point still north of the path of the bus, she stopped momentarily; that the bus, then about opposite the center of the safety island east of Homan avenue, "was coming very fast;" that "it was coming so fast" she stopped to allow it to pass in front of her; that she saw the truck, which was traveling northeast on Ogden,

turning in the southwest-bound car track, and "then this bus speeded and came into the intersection and it just whirled at me and it hit me." Plaintiff further testified that, as the bus swerved, she "tried to go forward to get away from it;" that she was uncertain whether she completed one or two steps when she heard a noise and was struck by the bus; that when she first saw the truck it was turning toward the north on Homan avenue and was then in the northerly, or southwest-bound, track at a point a little east of the west crosswalk; that she saw the truck crossing the westbound car track before the bus swerved toward the point where she stopped in the street; that no part of the truck hit her. The evidence further shows that when the bus was finally brought to a stop, it was headed northwesterly on the north sidewalk of Ogden avenue, approximately sixty feet west of the west curb of Homan avenue. All of its wheels were resting on the sidewalk, excepting its left rear wheel, which was about at the curb line of a driveway located there. Plaintiff, after the accident, was taken from underneath the bus, back of the left front wheel.

Five witnesses, four of whom were police officers, testified to the presence of dual skid marks extending a distance estimated at 70 feet from a point east of the west crosswalk of Homan avenue and 10 to 15 feet north of the north rail of the southwest-bound car track, to the place where the bus came to rest. The rear wheels of the bus were dual wheels. Lloyd Gisinger, driver of the truck, called as a witness on behalf of himself, Arthur J. Gisinger and Capitol Freight Lines, Ltd., testified he saw the bus when it was about 100 feet east of the east safety island; that he did not see it again until it was about five feet from him; that he was unable to estimate the speed of the bus. According to his testimony, a light delivery truck passed them on the right, cut in to the left and stopped in front of them on the northeast-bound car tracks at the west cross-

walk of Homan avenue, that he turned his tractor abruptly to the left, and that the collision with the bus followed. The presence of the light delivery truck was not noted by any other witness. Arthur J. Gisinger, also riding in the truck, did not see the bus until after the impact.

Thomas Forgard, the driver of the bus, testified that as he approached Homan avenue he was driving southwest in the street-car tracks at a speed of twenty to twenty-five miles an hour; that the bus was at the east end of the east safety island when he first saw the truck, which was coming northeast and then about 70 feet west of the west safety island; that, about twenty-five feet west of the west crosswalk, the truck suddenly swerved abruptly to the left, in front of the path of the bus, and that when the truck began to swerve the bus was in the center of the intersection. He stated, "I swerved the bus to the right as short as possible and applied the brakes;" that the left front of the bus collided with the right front of the truck at approximately four or five feet north of the north rail and a few feet west of the crosswalk; that the force of the impact disconnected the air lines of the bus, releasing the air from the brakes, and that the bus continued on without brakes until it stopped. Forgard testified that he did not see any pedestrians in the west walk of Homan avenue. He further testified that, operating at a speed of 20 to 25 miles an hour, he could, in an emergency, stop the bus in about 25 feet. Other witnesses for defendants testified that the bus was being driven in the southwest-bound car tracks; that it was entering the intersection of Homan and Ogden avenues at the time the tractor made its turn to the left into the path of the bus, most of them placing the position of the bus at about the center of Homan avenue, and that its speed was about 20 to 25 miles per hour. One witness for defendant testified the bus was not traveling fast, and another that its speed was moderate. There was also testimony which indicated, con-

trary to plaintiff's testimony, that after she had stopped momentarily she dashed across ahead of the bus and was struck by the tractor as it was making its turn.

The evidence was conflicting on the question of negligence and due care on the part of plaintiff. This question of fact has been settled by the verdict of the jury, the judgment on the verdict, and the affirmance by the Appellate Court. It is insisted, however, that the judgment should be reversed because the verdict was grossly excessive, and indicated passion and prejudice on the part of the jury. The facts show, however, severe and permanent injuries, a partial paralysis and the necessity for constant treatment. It is unnecessary to set out at length the extent of the injuries and the damages sustained inasmuch as this question, also, is one which is settled by the judgment of the Appellate Court. This court, in *Gaddie* v. *Whittaker*, 344 Ill. 149, quoting from *McCulloch* v. *Illinois Steel Co.* 243 Ill. 464, said: "It has been so many times decided by this court that the amount of damages sustained by reason of a negligent act or omission is a question of fact for the jury, which is finally settled by the judgment of the Appellate Court, that it seems an unnecessary repetition to cite cases in support of this rule of law." The trial court in considering this question of the extent of the damages required a remittitur and entered the judgment in this case after a careful consideration of the facts and the injuries sustained. We see no reason for disturbing the judgment as affirmed by the Appellate Court.

Dr. Eric Oldberg was called by plaintiff as an expert witness. Dr. Oldberg is the head of the departments of neurology and neurological surgery of the University of Illinois. He testified that, as a result of his examination of the plaintiff and from his observation of the use of her ankle joints and the manipulation of her feet, her manner of walking was abnormal and could be accounted for only through lack of coordination of agonist and antagonist

leg muscles. It is urged that he could have arrived at this conclusion only through facts obtained from the plaintiff, and that, therefore, his testimony was not based purely on objective symptoms observed by him. This is a matter of argument. It can equally well be argued that as an expert he was able to arrive at a conclusion as to the condition described by him from his observation based on his knowledge and long practice. *Schmidt* v. *Chicago City Railway Co.* 239 Ill. 494; *Chicago Union Traction Co.* v. *Fortier,* 205 id. 305.

Complaint is also made of the failure to include, as an essential element of the hypothetical questions propounded to various experts, certain facts regarding the physical condition of the plaintiff. No specific objection based on the failure to include such facts as elements for consideration in the hypothetical questions was made at the trial. It was the duty of the defendants to point out the failure to include such elements in order to afford the plaintiff an opportunity to remedy the defect, if such existed. *Griswold* v. *Chicago Railways Co.* 339 Ill. 94; *Chicago Union Traction Co.* v. *Roberts,* 229 id. 481.

On the trial of this cause, on cross-examination, Lloyd Gisinger, the driver of the truck, was asked certain questions which elicited the information, among other things, that the Capitol Freight Lines, Ltd., was no longer in business. Gisinger and the Capitol Freight Lines were defendants in the cause. It was claimed by the plaintiff that Gisinger at the time of the accident was, in fact, the agent of the defendant, Capitol Freight Lines. Gisinger was subsequently dismissed out of the cause but the cause continued as to the Capitol Freight Lines, which was retained as a party defendant and judgment entered against it. After the testimony was in, an effort was made in chambers to have the court declare a mistrial. The defendants, Bluebird System, Inc., and Bluebird Coach Lines, Inc., are

not in a position to raise the question. No objection was made at the time in open court and the trial judge given no opportunity to rule upon the objection, nor to instruct the jury in regard to their consideration of the evidence. Objections to testimony should be made in apt time and failure to seasonably object cannot be availed of when raised too late. If a party desires to call in question the admissibility of testimony it is his duty to object in apt time to obtain a ruling of the court. (*Board of Trade Telegraph Co.* v. *Blume,* 176 Ill. 247.) The claim that the dismissal of Lloyd and Arthur Gisinger from the cause as defendants constituted reversible error is without force. It developed through the course of the trial that they were, in fact, agents of the Capitol Freight Lines, Ltd. It was within the right of the plaintiff to retain the principal and dismiss as to the agents. Moreover, no objection appears to have been raised at the time plaintiff orally moved to dismiss as to them.

It is next insisted that error was committed in allowing James McQuillan, a commercial photographer, to testify on rebuttal, that defendants' exhibits 7 and 14 were photographs taken by him at the request of McKenna and Harris, lawyers, and that he had taken, in all, six pictures. It is claimed such testimony was prejudicial in the absence of proof that the additional pictures or the negatives were not available, or that defendants, or their counsel, ever had their possession. The court denied defendants' motion to withdraw a juror, and thereupon defendants moved the court to instruct the jury to disregard the testimony. This motion the court sustained, except as to that part with respect to the number of pictures. The evidence introduced was sufficient to justify inquiry regarding disposition of the remaining four photographs admittedly taken by this photographer and not introduced, and, as argued by plaintiff, she was entitled to any inference naturally arising from

their nonproduction, namely, that the pictures, if produced, would have been unfavorable to defendants. *Mitchell v. Louisville and Nashville Railroad Co.* 375 Ill. 545.

Certain instructions given on behalf of plaintiff are assailed. Instruction No. 1 outlined plaintiff's theory of the occurrence, her due care, and contained a summary, in condensed form, of the allegations of the complaint as to the negligence charged against Capitol Freight Lines, Ltd., and similarly summarized the allegations as to what would constitute the negligence of the Bluebird corporations, concluding: "If you believe from a preponderance of the evidence, under the instructions of the court, that the plaintiff has proved that the defendants were guilty of one or more of the particular acts of negligence, as above set forth and as alleged in her complaint, and that such negligence, if any, caused or proximately contributed to cause the accident and injury complained of in this case, and that the plaintiff was then and there and prior thereto in the exercise of ordinary care for her own safety, then you should find the said defendants guilty." The instruction is claimed to be unintelligible and to violate the rule requiring the court to define the issues to the jury, and not merely to recount the allegations of plaintiff's complaint. Plaintiff defends the instruction on the ground that every material allegation of the complaint was put in issue, thus requiring the inclusion in the instruction of all contested matters. While unnecessarily lengthy, the instruction so given was not improper. . Similar instructions, equally, if not more, verbose in form, while criticized, have been held not to constitute error. *Reivitz v. Chicago Rapid Transit Co.* 327 Ill. 207; *Liska v. Chicago Railways Co.* 318 id. 570; *West Chicago Street Railroad Co. v. Lieserowitz,* 197 id. 607.

It is further insisted that the quoted language makes the instruction a peremptory one, thus requiring it to be complete in itself and rendering it not susceptible of being

cured or aided by any other instruction in the series. Two features are assailed in this respect, namely, (1) that after outlining three of the enumerated charges of negligence ascribed to defendants it is specified such acts were done "contrary to and in violation of a certain statute of the State of Illinois," without including the provisions of or identifying the particular statute claimed to be violated; that to render it complete and understandable to the jury such information had to be furnished extrinsically and (2) that a verdict is directed against all the defendants, or none, without providing for the intermediate contingency of one of the defendants being guilty and one not guilty, and that, consequently, a verdict returned in accordance with the direction given is contrary to law and that the judgment entered thereon should not be allowed to stand. Under the particular circumstances present in this case, the instruction, as given, is not vulnerable to the attacks made upon it. It is complete in itself and contained all the elements requisite to sustain a verdict. In this respect, there is not present the vice of the instruction in *Hanson* v. *Trust Company of Chicago,* 380 Ill. 194, cited by defendants. There, one of the essential elements was definitely lacking. Here, each of the three enumerated charges contains a sufficient summary of specific details of negligence relied upon to constitute a violation of the statute described and to justify a finding of guilty of the negligence charged. No misunderstanding or confusion should arise in the minds of the jurors in applying the charges of negligence thus enumerated to the evidence adduced. The instruction, as given, was sufficient to sustain the verdict rendered against all defendants then remaining in the cause. The Capitol Freight Lines, Ltd., by its failure to appeal, has indicated its decision to be bound thereby, and the jury's evaluation of the negligent conduct of the appealing defendants and its intention to hold them liable is sufficiently clear from the answers to three special interroga-

tories submitted to it at the request of such defendants. By the answers, the jury was required to state whether the bus driver carelessly failed to grant a right of way to plaintiff; whether he carelessly drove faster than reasonable and proper, and whether he carelessly failed to decrease his speed upon approaching the crossing. All interrogatories were answered in the affirmative, thus disclosing that defendants were not held liable by the jury on the basis of the negligence of any other defendant.

Instruction No. 3, which told the jury that on the date of the accident there was in force a statute requiring a vehicle to yield the right of way to a pedestrian crossing the roadway, is complained of because of its inapplicability to the facts, and also because it is claimed to be a mere abstract statement of a proposition of law. We perceive no error in the giving of this instruction.

Instructions Nos. 30 and 31 are said to be erroneous because they refer the jury to the plaintiff's complaint to determine the charges of negligence. Inasmuch as the finding of the jury is confined by the instructions to acts of negligence as alleged in her complaint, "and as defined in these instructions," the contention is without merit. Instruction No. 31 is further complained of because it is stated to be peremptory and yet does not require the jury to find that the negligence charged was a proximate cause of her injury. The instruction was not peremptory. It does not undertake to tell the jury that if it found defendants guilty of the negligence charged it should find for the plaintiff. *Murphy* v. *Illinois State Trust Co.* 375 Ill. 310; *Bernier* v. *Illinois Central Railroad Co.* 296 id. 464.) It was directed solely to the apportionment of damages between the various defendants and, as stated, was limited to the elements of negligence and damage as defined in the instructions. In other instructions the jury was told damages could not be awarded unless the negligence charged was the proximate

cause of the injury and that actionable negligence must bear a causal relationship to the resulting damages. When taken together with other instructions and read as one connected series, the instruction was not improper. *Chicago City Railway Co.* v. *Bundy,* 210 Ill. 39; *Central Railway Co.* v. *Bannister,* 195 id. 48.

Numerous criticisms are advanced pertaining to instruction No. 42, a stock instruction commonly used in personal injury cases, enumerating the elements to be considered in assessing plaintiff's damages. To comment on each objection advanced would serve no useful purpose. We deem it sufficient to say that the instruction is not subject to any of the criticisms advanced.

The remaining contention requiring consideration is that the Appellate Court erred in holding that the evidence was sufficient to support the verdict. Incidentally, it is argued that in passing upon their motion to direct a verdict, made at the close of plaintiff's evidence, ruling on which was reserved until after the verdict, defendants were entitled to have the Appellate Court pass upon the sufficiency of the evidence as it stood at the close of plaintiff's case. Section 68(3)a of the Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 192,) provides: "Hereafter, in all civil actions at law, in courts of record, if either party shall at the close of the testimony, and before the case is submitted to the jury, request the court for a directed verdict in his favor, the court may reserve his decision thereon, and submit the case to the jury under proper instructions as to the law applicable to such case." By its terms, the statute authorizes the reservation of such a motion made "at the close of the testimony," but is silent as to one made at the close of plaintiff's evidence. Obviously, had it been the legislative intent to extend the privilege to a motion made at the close of plaintiff's case, appropriate language could easily have been added to effectuate such intention. (*Dixon* v. *Smith-Wal-*

*lace Shoe Co.* 283 Ill. 234; *Joliet, Aurora and Northern Railway Co.* v. *Velie,* 140 id. 59.) In *Dixon* v. *Smith-Wallace Shoe Co. supra,* we stated: "It may be further said that on a motion to direct a verdict at the close of plaintiff's evidence of course only the evidence introduced by the plaintiff is to be considered, but if, after that, the defendant himself offers evidence and again offers said motion, the question whether there is sufficient evidence to sustain the judgment is to be determined from all the evidence in the record, as well that offered by the defendant as that offered by the plaintiff." Moreover, considering plaintiff's evidence alone, it was sufficient upon which to base a verdict against defendants.

As has already been said, the questions of fact have already been settled by the judgment of the trial court and the affirmance of the judgment by the Appellate Court. The weight of the evidence is not for our consideration. The evidence as to the negligence of the defendants has been settled by the affirmance of the judgment by the Appellate Court. We find from reading the record that there was sufficient evidence upon which to base the judgment rendered on the verdict. Where there is evidence sufficient to support such a judgment, this court does not weigh the evidence for the sole purpose of finding out upon which side it preponderates. Under the circumstances here, we find there was no error in denying defendants' motion to direct a verdict, and the evidence being conflicting, the cause was properly submitted to the jury for determination.

The judgment of the Appellate Court is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE MURPHY, dissenting.