Andrew P. Kanousis, Appellee, v. Lasham Cartage Company et al., Appellants.

Gen. No. 43,880.

Opinion filed June 4, 1947. Rehearing opinion filed November 19, 1947. Released for publication December 24, 1947.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellants; WILLIAM H. SYMMES, DAVID JACKER and CHARLES M. RUSH, all of Chicago, of counsel.

Joseph D. Ryan and Louis G. Davidson, both of Chicago, for appellee.

.On Rehearing.

Mr. Justice Burke delivered the opinion of the court.

On July 19, 1944, Andrew P. Kanousis, about 55 years old, was employed as a second cook in a restaurant at 1721 West 18th street, Chicago. He lived in the vicinity of 34th street and Cottage Grove avenue. On his way home from work that morning he stopped at another restaurant operated by his employer at 428 South Halsted street. He left there about 1:30 a.m. and boarded a streetcar at Harrison and Halsted streets. He got off the streetcar at Van Buren and Dearborn streets. He then walked to the north side of Van Buren street and east on Van Buren street, intending to board a southbound Cottage Grove avenue car at Wabash avenue and Van Buren street. State street runs in a northernly and southernly direction and is one block east of Dearborn street. Wabash avenue runs in the same direction and is one block east of State street. The distance between Van Buren and Congress streets, the latter being the first block south of Van Buren street, is about 440 feet. He arrived at the northwest corner of State and Van Buren streets, and while walking in an easternly direction from the west curb of State street, was struck by a truck owned by the Lasham Cartage Company, a corporation, then being driven in a northernly direction by Guy Bovee, its servant. The truck consisted of a tractor and trailer. The tractor was an autocar about 10 feet long of the snub nose type with a cab over the engine so that the windshield was almost as far forward as the front bumper, giving the driver a good view. The trailer was about 20 feet long. Mr. Kanousis was taken by the police to St. Luke's Hos-

pital, where he remained for three weeks. A brace was prescribed for his back two months later. His injuries consisted of lacerations, fractured ribs and aggravation of an arthritic spine condition. He also claims that there were fractures of some of the arthritic spurs in his spine.

In a two count complaint filed in the superior court of Cook county by Andrew P. Kanousis against the Lasham Cartage Company and Guy Bovee, defendants were charged, in the first count, with various acts of negligence, and in the second count with various acts of wilful and wanton misconduct. Issue was joined. A trial before the court and a jury resulted in a verdict finding the defendants guilty and assessing plaintiff's damages at $11,000. The court sustained defendants' motion to strike the second, or wilful and wanton count. Motions by defendants and each of them to direct a verdict and for a new trial were overruled. The court entered judgment on the verdict and defendants appealed.

State street is 60 feet 4 inches wide from curb to curb. Two car tracks occupy 15 feet 5 inches of space in the center of the street. Van Buren street runs east and west and is 38 feet wide from curb to curb. The intersection is well lighted. The weather was clear and the street dry. Traffic signals are located on all four corners and alternately show green, yellow and red lights. The mishap occurred at about 2:10 a.m. There were only two occurrence witnesses, the plaintiff and Bovee. Plaintiff testified that when he got to the northwest corner of State and Van Buren streets the traffic lights were green for Van Buren street traffic; that as he reached the west curb and started to cross State street he saw the headlights of a northbound vehicle, which was then a block south of Van Buren street; that he walked east on the north crosswalk; that there were no other vehicles or streetcars in the vicinity of the intersection; that he con-

tinued to watch the traffic lights and the approaching truck from time to time; that the truck "had the red light" and would have to stop or slow down; that when he, plaintiff, reached the east rail of the northbound track, he last noticed the traffic lights; that they were still green for east and westbound traffic; that just after he passed the northbound streetcar tracks, he saw the truck about 35 or 40 feet away "coming pretty fast"; that it was traveling at a speed of 25 to 30 miles an hour; that it did not reduce its speed before the impact; that the truck was traveling 2 or 3 feet outside the tracks; that when plaintiff saw it, he tried to jump back; that the truck swung to the right; that no horn was blown; that the front of it struck him; that it hurled him about 20 feet to the north; and that the truck went on until it came to a stop at the east curb, with the back end of the trailer about 50 or 60 feet north of the crosswalk.

There was evidence that after the impact plaintiff lay a foot or two outside of the east rail of the northbound tracks, and 18 to 25 feet north of the north building line of Van Buren street, unconscious or semiconscious. The left front headlight of the tractor was bent and the glass was broken. The driver, Bovee, did not see plaintiff at any time before the tractor struck him, did not know where he came from, and did not know he had struck a person until after the occurrence. Bovee testified that he was driving north on State street at a speed of 15 to 20 miles an hour as he approached Van Buren street; that as he approached that street the traffic lights changed; that at the time he drove into the intersection, the lights were green for him; that when his truck was approximately 50 feet north of the north crosswalk of Van Buren street he heard a thud and glass breaking; that he looked into his rear view mirror; that he saw a man lying in the street; that he stopped his truck so that it was about 30 feet from the injured man; and that he immediately got out to

assist him. A police officer who arrived at the scene shortly after the occurrence, testified that plaintiff was lying in the street 20 to 25 feet north of the crosswalk.

Bovee testified further that as his truck approached the intersection there was a streetcar on the southbound rails north of Van Buren street; that as he approached the intersection there were two automobiles ahead of him, waiting for the lights to change; that he slowed down his truck sufficiently to give these automobiles ahead of him a chance "to get out of the way"; that he got "up probably 25 to 30 feet behind those cars"; that as he came to the intersection he was "slowing down"; that he picked up speed after he "slowed down and shifted gears"; that he "shifted back up again"; and that as he crossed Van Buren street he picked up "a little speed." Answering the question, "Did you continue to pick up speed until you got to the north crosswalk?" he said: "Perhaps, yes." He testified further that traveling at a speed of 15 or 20 miles an hour he could "probably stop in 15 or 20 feet," and that proceeding at a speed of 30 miles an hour he could stop "within a distance of 25 feet." Bovee did not mention a streetcar when discussing the occurrence with the district police officers, nor did he mention it to the police from the Accident Prevention Division, to whom he gave a signed statement. In the signed statement he told the police there was no obstruction to his view ahead or to the left; that he could see "two blocks" ahead; and that he could see the "buildings" on the left. On the trial he denied that he could see the buildings to his left because "the streetcar would have stopped that." A few questions later he admitted that he did tell the police he could see the buildings to his left. The headlights of the truck were lit. There was evidence that plaintiff was struck when he was a foot or two east of the east rail of the northbound track.

Defendants maintain that the giving of in-

struction No. 9, tendered by plaintiff, constituted reversible error in that although it amounted to a peremptory instruction, it failed to include the necessary element of freedom from contributory negligence. This instruction reads as follows:

"You are instructed that the plaintiff is entitled to recover for the aggravation of a pre-existing ailment or condition to the extent that you may find such aggravation, if any, to be the natural and proximate result of the accident, if you find the defendants guilty of negligence, as charged in the plaintiff's complaint."

Plaintiff asserts that it is not a peremptory instruction; that it deals with the question of damages; that it did not direct a verdict; and that it has repeatedly been held that such instruction need not include the element of plaintiff's due care, where, as in the instant case, the subject is fully covered by other instructions in the series. We agree with defendants that if an instruction is so phrased that it amounts to directing a verdict, although not specifically directing a verdict for one party or another, it comes within the rules applying to peremptory instructions. In *Pardridge v. Cutler*, 168 Ill. 504, the court said (512):

"The law applicable to different questions may be stated in separate instructions, and the entire law applicable to all the questions involved in a case need not be stated in each. In such case the instructions supplement each other, and if they present the law fairly when viewed as a series, it will be sufficient. But if an instruction directs a verdict for either party, or amounts to such a direction in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed. This instruction stated that if the jury found certain facts set out in the instruction, plaintiff had a right to recover his commissions and the moneys paid out to him in the transaction."

Instruction No. 9 requires proof of two elements, negligence and proximate cause, but omits the necessary element of freedom from contributory negligence which it was incumbent upon plaintiff to prove. This instruction uses the phrase "is entitled to recover," which is similar to the phrase "plaintiff has a right to recover," used in the instruction challenged in the *Pardridge* case. In *Smith v. Central Ry. Co.,* 142 Ill. App. 311, the court said (315):

"But where an instruction in effect directs a verdict, or by the ordinary interpretation of the language used it is susceptible of being understood by an ordinarily intelligent person as assuming the finding of a verdict by a jury for one of the parties, such an instruction must be regarded as directing a verdict. *Pardridge v. Cutler,* 168 Ill. 504; *Montgomery Coal Co. v. Barringer,* 218 Ill. 327; *Terra Cotta Lumber Co. v. Hanley,* 214 Ill. 243; *Ill. Central R. R. Co. v. Smith,* 208 Ill. 609; *C. & A. R. R. Co. v. Kuckkuck,* 197 Ill. 307."

Plaintiff, discussing instruction No. 9, states that "in view of their wilful and wanton misconduct the defendants should not have been permitted to avail themselves of the defense of contributory negligence as a bar to plaintiff's recovery. They were permitted to do so in the trial court, but this court has a right to look to the facts and determine whether the defendants were guilty of wilful and wanton misconduct." Plaintiff recognizes that in a case based on wilful and wanton misconduct he is not required to prove that he was in the exercise of due care. At the close of plaintiff's case, the attorney for defendants moved to strike count 2, based on charges of wilful and wanton misconduct. He argued that there was no evidence to support this count. The trial judge indicated that he agreed with the attorney for defendants, whereupon the attorney for plaintiff stated: "You can probably dispose of it right now.

Just let the order be entered and we can go right on.''
The attorney for defendants said: ''Count 2 then may
be dismissed. I don't know what kind of an order
you want on that.'' The court inquired: ''Are you
withdrawing it, or order of court dismissing it?'' to
which the attorney for plaintiff replied: ''I think it
should be by order of court.'' The court assented
and the order was accordingly entered. Plaintiff did
not give notice of cross-appeal under Supreme Court
rule 35. No notice of cross-appeal is necessary where
the relief sought is purely incidental and related pri-
marily to the settlement of issues which might arise
should the case be returned to the trial court for fur-
ther action. The distinctions between affirmative and
incidental relief are brought out in *Pelouze v.
Slaughter,* 241 Ill. 215, 224. An appellee, although he
has secured all of the relief which he claimed, may
assign cross-error where he desires to bring before
the Appellate Court grounds in support of the action
of the trial court which do not appear from the deci-
sion of the court. *McNulty v. Sherman Hotel Co.,* 280
Ill. App. 325. A successful appellee is permitted to
assign cross-errors as to a constitutional question for
the purpose of disclosing to the Appellate Court the
existence of the constitutional question and as a basis
for the transfer of the appeal to the Supreme Court.
See also *Scribner v. Village of Downers Grove,* 372 Ill.
614, 616; *People v. Bradford,* 372 Ill. 63; *Heine v.
Degen,* 362 Ill. 357. Supreme Court rule 39 per-
mits the assignment of cross-errors in the absence of
a notice of cross-appeal, where affirmative relief is
not sought by the appellee with respect to the judg-
ment order or decree from which the appeal is taken.
In the instant case, in arguing that instruction No. 9
is not a peremptory instruction, plaintiff mentions
that the evidence shows that defendants were guilty
of wilful and wanton misconduct, but does not make a
point of or argue that the trial judge committed error

in striking the second count. It will be noted from the colloquy between the court and counsel in the trial court that counsel for plaintiff did not there offer any opposition to defendants' motion to dismiss the second count. The case was submitted to the jury on the first count. The instructions requested by plaintiff and given by the court required plaintiff to prove his case under the first count. In the state of the record plaintiff is not in position to argue that "in view of their wilful and wanton misconduct the defendants should not have been permitted to avail themselves of the defense of contributory negligence as a bar to plaintiff's recovery."

Plaintiff states that the rights of the defendants were fully safeguarded by numerous instructions on what he had to prove before he could recover; that instruction No. 9 was not a peremptory instruction; that it concerned only the question of damages, and that when considered as a part of the series of the 36 instructions given, it could not reasonably have been misunderstood or misinterpreted by the jury. It cannot be doubted that the question of contributory negligence was an important issue in the case. In support of his position that the instruction complained of deals with the subject of damages only and is not a peremptory instruction, plaintiff cites *Murphy v. Illinois State Trust Co.*, 375 Ill. 310, 316; *Goldberg v. Capitol Freight Lines*, 382 Ill. 283, 295; *Bernier v. Illinois Cent. R. R. Co.*, 296 Ill. 464, 472, and other cases. In the *Murphy* case the Supreme Court points out that the instruction there under attack "does not undertake to tell the jury that if it found such a condition to exist, it should find for the plaintiff." In the instant case the instruction stated that the plaintiff "is entitled to recover" if the jury found the defendants guilty of negligence. In the *Goldberg* case the Supreme Court stated that the instruction is not peremptory because "it does not undertake to tell the

jury that if it found defendants guilty of the negligence charged, it should find for the plaintiff.'' The instruction in the *Goldberg* case was limited to the elements of negligence and damages as defined in the other instructions. No such limitation is found in instruction No. 9. In the *Bernier* case the instruction told the jury that if they found the defendant guilty as charged in the declaration, they should assess damages for the pecuniary loss to the next of kin. That instruction did not mention any of the elements constituting the defendant's guilt.

In support of his contention that the instruction is not peremptory in character and relates solely to the measure of damages, plaintiff relies on *Chicago, B. & Q. R. Co. v. Payne,* 59 Ill. 534; *Illinois Cent. R. Co. v. Gilbert,* 157 Ill. 354; *Bonato v. Peabody Coal Co.,* 248 Ill. 422; *Chicago, M. & St. P. R. Co. v. Dowd,* 115 Ill. 659; *Chicago, M. & St. P. R. Co. v. O'Sullivan,* 143 Ill. 48; *Pennsylvania Co. v. Marshall,* 119 Ill. 399; *McMahon v. Sankey,* 133 Ill. 636; *Illinois Cent. R. Co. v. Sanders,* 66 Ill. App. 439. In the *Payne* case an instruction advised the jury that if the defendant was guilty of negligence as charged in the declaration and that such negligence resulted in the death of Payne, then the plaintiff is entitled to recover ''. . . such damages as the jury may deem from the evidence and proof, a fair and just compensation. . . .'' In that case the defendant contended that the instruction withdrew from the jury consideration of the conduct of the deceased. The court held that the instruction dealt merely with ''the measure of damages and that the instruction was proper.'' In the *Gilbert* case the instruction stated that if the jury found the defendant ''guilty of the negligence charged in the plaintiff's declaration, and that the same resulted in the death of Charles F. Gilbert, then the plaintiff is entitled to recover in this action . . . such damages as the jury may deem a fair and just compensation for whatever

pecuniary damage, if any, the evidence shows said next of kin had sustained by reason of said death, not exceeding $5,000.'' The court said (366):

"Instructions like the one now under discussion were before this court in *Chicago, Milwaukee and St. Paul Railway Co. v. Dowd,* 115 Ill. 659; *Pennsylvania Co. v. Marshall,* 119 id. 399; and *Chicago, Milwaukee and St. Paul Railway Co. v. O'Sullivan,* 143 id. 48, in each of which it was held to relate solely to the measure of damage. An examination of all these cases will show there is no conflict in the opinions of this court as to instructions of the character of the one given in this case for the plaintiff. It relates solely to the measure of damage, and need not incorporate the requirement that plaintiff was in the exercise of due care and caution. It was not error to give it.''

In the *Bonato* case an instruction was given that if the jury found the defendant guilty of negligence as charged in the declaration, the widow or next of kin could recover "such damages as the jury may deem . . . a fair and just compensation. . . .'' In asserting that the instruction had been approved in numerous other cases, the court said (427):

"In all of those cases it was held not to be regarded as an instruction stating the law as to negligence, but simply as one relating to the measure of damages in case plaintiff should recover, and in each case it was held not erroneous. It is clear from the reading of these decisions that the same argument was urged against the correctness of this instruction that is urged here.''

Commenting on the contention that an instruction erroneously omitted the element of plaintiff's due care, the court in the *Dowd* case said: "The point of this instruction is the measure of damages, and is in this respect entirely correct. But appellant's counsel insist that it is wrong because it withdraws from the

jury all consideration of the conduct of the deceased. We do not think the instruction obnoxious to the criticism, as claimed.''

The measure of damages varies according to what type of legal action is involved. It is different in a negligence action for personal injury than in a wrongful death action. The measure of damages for any particular type of action is a statement of the factors that may be considered in assessing the total amount of damages. An instruction explaining the proper measure of damages for any particular type of action should specify what factors or elements may be considered in assessing the total amount of damages. All the cases last discussed, except the *Sanders* case, are wrongful death actions. In a wrongful death action damages are measured by a single factor— pecuniary injury to the widow or next of kin. The Supreme Court holding in these cases that the instructions related solely to damages, was based upon the reasoning that the instructions were merely defining the measure of damages. The instructions in each case define the measure of damages practically in the terms of the statute. Sec. 2, ch. 70, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 38.02]. Plaintiff's instruction No. 9 does not purport to define the measure of damages in a personal injury action. It cannot be considered as relating solely to the measure of damages. In instruction No. 15 plaintiff gave the usual directions defining the measure of damages in a personal injury action. Plaintiff could have included the element of aggravation of a pre-existing condition in instruction No. 15. Instruction No. 9 tells the jury that plaintiff can recover for an aggravation of a pre-existing condition if defendant is guilty of negligence, omitting any requirement of freedom from contributory negligence. By segregating this one element of damages, aggravation, and making it the subject of a special instruction, the jury could well believe that a different

rule applied to persons already physically handicapped. Where the instruction is concerned only with one element of damages, it cannot be defended on the basis that it defines the measure of damages. In the *Sanders* case the instruction contained all the elements of damages and might be considered as relating solely to the measure of damages.

Our view is that the rule stated by the Supreme Court in the cases cited by plaintiff, based on wrongful death actions, should not be extended to approve an instruction like plaintiff's No. 9, which does not relate solely to the measure of damages. In our opinion instruction No. 9 in effect, directs a verdict if the jury found the defendants guilty of negligence and that such negligence was the proximate cause of the injuries. It was error to give this instruction in that it omits the element of freedom from contributory negligence. Where an instruction directs a verdict, or amounts to such a direction, the instruction must necessarily contain all of the facts which will authorize the verdict directed. Plaintiff maintains that defendants are estopped from complaining of instruction No. 9 since their instruction No. 30 adopted the same theory and is subject to the criticism urged against instruction No. 9. A party cannot complain of an erroneous instruction where his own instruction is subject to the same criticism. *Spring Creek Drain. Dist. v. Greenawalt*, 335 Ill. 147. We find that instruction No. 30 refers only to damages and not to liability and that the tendering of that instruction does not estop defendants from complaining of instruction No. 9.

Defendants insist that the court also committed reversible error in giving, at the request of plaintiff, instruction No. 27, which reads:

"On the date of the accident and injury complained of by the plaintiff in this case there was in full force and effect a certain statute of the State of Illinois which provided and provides that it shall be the duty

of the driver of a motor vehicle to decrease the speed of his vehicle when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person or vehicle, or on entering the highway in compliance with legal requirements and the duty of all persons to use due care.''

The statute on which the instruction is based is Sec. 49 of the uniform act regulating traffic on highways (Par. 146, ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.178]). Plaintiff states that the statute, as set forth in instruction No. 27, required the driver *inter alia,* (a) to decrease speed when approaching and crossing an intersection; (b) to decrease speed when special hazard exists with respect to pedestrians; and (c) to decrease speed as may be necessary to avoid colliding with any person . . . or on entering the highway in compliance with legal requirements and the duty of all persons to use due care. Plaintiff points out that the jury was instructed in instruction No. 26 that the plaintiff charged that defendants negligently violated the statute in question, and that such negligent violation caused the ''accident in question'' while the plaintiff was in the exercise of ordinary care; that defendants' instruction No. 32 told the jury that the plaintiff could not ''recover at all in this case'' unless he proved that he sustained injuries ''as charged in the complaint,'' and proved that ''the defendants were guilty of negligence in the manner charged in the complaint.'' Therefore, plaintiff states, he could only recover under the charge in the complaint that defendant carelessly and negligently failed adequately to decrease the speed of the motor

truck when approaching and crossing the intersection, and under instruction No. 27, if the jury found from a preponderance of the evidence that (a) defendant failed to decrease speed as required by the statute, (b) such failure to slow down was careless and negligent and a violation of the statute, and (c) that such carelessness and negligence was the proximate cause of the occurrence.

The parties are in agreement that the question of defendant's speed was for the jury. Instruction No. 27 informs the jury that the statute requires that speed must be decreased when approaching and crossing an intersection regardless of what speed he is traveling, traffic signals or the status of traffic on the highway. Subpar. (c) of par. 146 does not establish an absolute duty to decrease speed at an intersection regardless of all circumstances. This paragraph means that traveling at a speed lower than the *prima facie* limits set forth in paragraphs (a) and (b) shall not relieve a driver of the duty to decrease speed if such a duty exists under the circumstances. The last part of paragraph (c) states when speed shall be decreased, and it does not require speed to be decreased regardless of the attending circumstances. It states that ''speed shall be decreased as may be necessary to avoid colliding with any person or vehicle, on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'' The last paragraph of the instruction states that speed shall be decreased as may be necessary to avoid colliding with any person or vehicle. We agree with plaintiff that this would be understood as modifying the first part of the instruction so as to require a reduction of speed only when attending circumstances made it necessary to avoid colliding with other persons or vehicles. When this instruction is considered with instruction No. 26 and defendants' instruction No. 32 and instruction No. 17 defining negligence, it is un-

likely that the jury would misconstrue it. In *Griffith v. Slaybaugh,* 29 F. (2d) 437, referring to the situation where a pedestrian is caught out on the crossing on a change of lights, the court said (439):

". . . the obligation rests upon the drivers of automobiles, not only to observe the situation, but to wait until the crossing is clear. Many automobile drivers seem to imagine that with the shift of the signal they are given a clear right of way against intersecting traffic. In this belief they recklessly start their machines, regardless of persons who are already rightfully on the intersection. It is the duty of drivers of machines to exercise the greatest vigilance and care under such circumstances, not only to have their machines under control, but to stop and wait until pedestrians have had an opportunity to clear the crossing. Failure to observe these precautions constitutes negligence on the part of the driver, which in case of accident is chargeable against him." We are of the opinion that the court did not err in giving plaintiff's instruction No. 27.

Defendants state that they were deprived of a fair trial by improper conduct on a number of occasions during the trial. From the statements in the respective briefs we believe that the attorneys, on a retrial, will be able to avoid any charge of prejudice by improper conduct. We do not feel that it is necessary to extend the opinion by discussing these charges. Finally, defendants complain that they were prejudiced when the jury was informed by one of plaintiff's witnesses that Bovee, the driver, was arrested shortly after the occurrence. In his brief plaintiff states that this information was volunteered by the police officer and that it was immediately stricken. We are confident that in another trial the witnesses will be cautioned about volunteering testimony that may be prejudicial. Because of the error committed in giving instruction No. 9, the judgment of the superior court

of Cook county is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with the views expressed.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.