SAMUEL COLVIN *et al.*

*v.*

KERSEY H. FELL *et al.*

1. SURVEY OF LANDS—*lines, corners, etc.* Where the field notes of the survey of a township call for due north and south lines for the sections, and the east and west lines call for distances, and section corners on the north and south lines, and the survey does not close, in the absence of other controlling circumstances, it cannot be determined which is correct and should control. And under a decree requiring the survey to be made according to the calls for variations from true lines, both calls cannot be observed.

2. SAME—*monuments.* Monuments placed by the original surveyors to indicate boundaries and corners, must, when identified, govern calls for corners and distances. But when not found, and other calls of the survey are repugnant, that must control which is, probably, most correct, to ascertain which other known monuments may be consulted.

3. SAME. Where a decree required commissioners to survey the exterior lines of a township having a large excess, and where corners for sections were not found, to equalize the distance between section corners, they might adopt one of these lines, and then run from them to corresponding lines on the opposite side of the township; *held,* that the decree was complied with by running direct and not deflected lines, although the latter might have produced a more accurate *pro rata* distribution of the surplus.

4. SAME—*variation between calls and monuments.* Where the field notes call for a true north and south line on the east side of a township, and it appears, from a monument found on the line, that it was deflected, and a decree requires the interior lines to be run parallel to the exterior lines, unless a variation is called for by the field notes, and the field notes for the section lines running north and south call for due north lines, this call must govern, as it varies from the deflected line of the township.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN M. SCOTT, Judge, presiding..

THIS was a bill in chancery filed by Jesse W. Fell and others, in the McLean Circuit Court, against Elias Heller and others. The object of the bill was to obtain a resurvey of township twenty-four north, in range three, east of the third principal meridian. The commencement of this proceeding was authorized by an act of the general assembly, adopted for the purpose of conferring power to have a resurvey made in this mode.

A hearing was had, and a decree appointing commissioners and prescribing the rules that should govern in conducting the survey. This decree was satisfactory to the parties, and no objection is made to it. The commissioners thus appointed proceeded to make the survey, and reported it to the court, where exceptions were filed, but on a hearing were disallowed, and the report approved and confirmed, to reverse which this appeal is prosecuted. The facts in the case appear in the opinion of the court.

Mr. A. T. REEVES, for the appellants.

Messrs. WILLIAMS & BURR, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It appears that township twenty-four north, in range two east in McLean county, was never surveyed into sections, or if so, that the interior corners were never established by the government surveyors. To avoid litigation, and to settle the rights of the various owners of the lands in the township, the general assembly, at its session of 1865 (Private Laws, vol. 1, p. 254), adopted an act authorizing any number of the own-- ers of lands in the township to file a bill in the McLean Circuit Court against the other owners, for the purpose of having commissioners appointed to resurvey the township, and to establish the boundary lines and corners of the different sections and quarter sections. Under the provisions of this act, a portion

of the owners filed a bill to the September Term, 1865, of that court, against the others. On the hearing at the return term, a decree was rendered, appointing Zimri Enos, A. F. Risley and John McGraw, commissioners to make the survey, and to establish the lines and corners of the sections and quarter sections, and to plant at each corner substantial stones as monuments.

The decree also required:

" That, in making said survey, said commissioners shall take and be governed by all corners that are known and satisfactorily proved to be original government corners, and where such a corner is found on the exterior line of the township on one side and no original corner on the opposite side, a line shall be run from said original corner, through the township, parallel with the outside boundary line of the township, unless the original field notes call for a variation from such parallel line, and if they do, then such line shall be run with the variation called for by the original field notes, and the spaces between all original corners shall be divided *pro rata*, in accordance with the calls of the original field notes, between said corners."

The commissioners proceeded under the decree and made the survey, and reported their action to the next term of the court. On the coming in of the report, exceptions were filed, which, on being heard, were overruled, and the report was approved and confirmed by a decree of the court. The cause is brought to this court to reverse the decree of confirmation. The exception taken to the report, and the disallowance of which is now complained of as error, is: That the commissioners, in running from known corners, on the south side of the township, to corresponding corners on the north side of the township, ran straight lines, and failed to regard the variations called for by the field notes, in establishing the intermediate corners, which would have produced crooked or broken lines, thereby giving to some sections more than their proper proportion, and to others no part of the surplus.

No exceptions are taken to the original decree, but it is conceded that it is correct in the principles upon which it requires

the survey to be made. It is also conceded that the exterior corners established on the township lines are correct and in conformity to the decree. Nor is there any objection made as to the mode adopted in running the east and west lines through the township. Thus it will be seen that the whole controversy turns on the mode adopted in running the north and south interior lines. And it is urged that if the calls of the field notes had been observed, it would have resulted in a more just and fair division of the surplus among the various owners of the lands of the township.

It seems that there are eight hundred acres or more of surplus land in this township. And the northern line of the township seems to be fifteen rods and seventeen links longer than the south line; and the west, thirteen rods and eight links longer than the east line. This then precludes the possibility of running the interior lines precisely parallel to the exterior lines. They might approximate, but could not, in the nature of things, be perfect parallels. The decree was no doubt rendered upon the supposition that the opposite township lines were of equal length, and that the township was perfectly square, or at least a perfect parallelogram. This being true, if the interior lines approximate as near as the outer lines will permit, to a parallel, the requirements of the decree must be held to have been answered.

It appears from their report, that the commissioners first established the township corners. They report that the north-east and south-east were proved to be original corners, and that the south-west corner was proved to have been recognized as such for more than twenty years. They found the north-west corner by surveying from other known corners. On the eastern boundary of the township, one original corner was found between the south-east and the north-east corners. Also on the south line, two other original corners between the south-east and south-west corners of the township. No original corners were found on the northern or western boundaries of the township. These points having been established, they surveyed and measured the distance on the south line between

these corners and divided the distance, *pro rata*, according to the calls, and set monuments for section and quarter section corners. They, in like manner, divided the distance on the east line of the township.

In establishing section and quarter section corners on the north and west lines of the township, they measured the whole length of these lines, and divided the distance, *pro rata*, in accordance with the calls of the original field notes, and set monuments for section and quarter section corners. The township was then subdivided into sections and quarter sections, by connecting the points thus established on the exterior lines of the township, by running lines from the corners on the south to corresponding corners on the north, and the section and quarter section corners were established by subdividing the distance *pro rata* in accordance with the distance called for by the original field notes and plat. True lines were then run from each interior section corner east and west to the opposite corner, and the distance between these points was equally divided and a quarter section corner established. We deem this statement of the facts as sufficient to present the questions raised on the sufficiency of the survey reported by the commissioners.

By the mode adopted by the government for the subdivision of townships into sections, the lines running east and west, although not continuously, run on approximately, but not strictly, true or straight lines. On the other hand, the north and south interior lines are generally slightly deflected, either to the east or west. This is produced in part by the system adopted, partly by the imperfection of the instruments employed, and to the careless use of them. Hence the sections, although intended as far as practicable to be of equal size, except the tiers on the north and west boundaries of the township, are not uniform. When the government surveyor came to divide the township into sections, after adjusting his compass, so as to run parallel with the line on the eastern boundary of the township, he commenced at the first section corner on the south line of the township, east of the corner,

and ran one mile north, where he placed a section corner. He then ran east, and measured the distance to the section corner on the township line. He thus established the west and north line of the section, and at the same time determined whether, as he intended, his western section line was parallel to the township line. If found to be incorrect, he changed the variation of his compass, and resumed his north line to the next mile corner, and then ran east as before, and he so continued until he reached the north line of the township, when he returned and surveyed another tier of sections, and so on until the township was subdivided.

In the survey of townships, the calls are for the cardinal points of the compass; and it was the design that they should be so run. But meridians always, owing to the shape of the earth, converge as the north is approached. The rate of approximation, unless modified by other causes, is about seventy-six links in the distance of six miles, and consequently gives an approximation of twelve and two-thirds links to the lines which bound the east and west side of each section. It is also necessary to observe the difference between the true and the magnetic poles, and to make a proper allowance for this difference, and also to allow for the convergence of the meridians before a true north line can be run. When to this we add the imperfections of instruments, and negligence of those employed, we see that the highest degree of skill and the greatest care that can be observed are requisite to close every section with precision, or to make such a survey mathematically correct. Whilst all surveys are so in theory, in practice they seldom are. Although not absolutely correct, they are sufficiently accurate to answer all practical purposes.

The original field notes of this survey call for straight or direct lines, and note no variation from such. Had deflected lines been run, the notes would most probably have called for the necessary variation, and given the degrees and minutes, but we find direct lines called for. We must, therefore, conclude that the persons conducting these surveys endeavored to run

direct lines, and did so in so far as was practicable with the instruments employed and adjusted as they were.

The commissioners followed the calls of the field notes, by running due north the required distance, and found no more than the usual difficulty in closing the sections. But by this mode, the township being largely in excess, considerable surplus was to be disposed of, which, in the mode adopted originally, would fall on the north and west sides of the township, a portion of which fell there, but not near so large as would have been produced had they pursued the course adopted by the government surveyor. By running a direct line from a section corner on the south to the corresponding corner on the north line of the township, they, to some extent, equalized the surplus, but not, perhaps, to the same extent as they could have done by deflecting these direct north lines to the westward, as shown by the witnesses.

The surveyor who divided the township into sections made his notes, calling for course and distance on the lines he then traced. But, as is generally the case when they come to be retraced, they do not close with precision. In some cases, by following the calls for the interior lines run north, and the distance for the lines run east, the latter are found to be too short, and in others too long. Thus we find the calls for course and distance of the two classes of lines fail to correspond, but are repugnant. In the absence of the original courses, which, when found, must control, it is unknown whether the call for course and distance on the lines running north, or the distance on the lines running east, shall govern. No one can tell whether the monument was placed at the one place or the other thus called for by the field notes. This being true, who can determine that the commissioners have not divided the surplus according to the field notes, as required by the decree. Had they placed the corners according to the call for distance on the lines running east, they would have violated the call of the same field notes for course on the lines running northward, and the call of the former cannot be more imperative than the latter. But the presumption would seem

to be rather in favor of the course than of the distance, as chain-men are more liable to inaccuracy in measurement than the surveyor in the course.

If the section corners were placed in the north line, as they usually are, and no doubt were in this survey, then the presumptions are decidedly in favor of the calls for course on the lines running north, rather than the distance called for on the lines running east. When the commissioners divided the large surplus in this township by fixing the section corners on the township lines equidistant from each other, thus dividing the surplus, and then ran the lines in a direct course to the corresponding corners on the opposite side of the township, equalization was proximately attained as near as it was practicable, and much nearer so than would have resulted by dividing the township in the mode originally pursued. And in this we can see no departure from the requirements of the decree. If it has failed to distribute the surplus *pro rata* among all of the sections, the fault is in the decree more than in the survey, and it was, and still is, unobjected to by the parties.

Having variant calls, one for course and distance in one direction, and the other for the same, at right angles to the former, and when tested by measurement, it is found that they do not close; and as both calls are for the cardinal points of the compass, in strictness, there is no call for a variation, but there are repugnant calls for distances; and as the decree has not, in terms, provided for that state of facts, the mode of equalization adopted by it must govern. But if the repugnant call for distance on the lines running east, can be regarded as a call for a variation, still we have the call for true north lines, repugnant to the other, and if one is as much to be regarded as the other, still the case is relieved of none of its difficulties. We would have in that case one portion of the field notes calling for true north lines, and another calling for a variation from true lines, and which shall be rejected? The one is as essential an element in a survey as the other. Dispense with either course or distance, and no survey could ever be made. In such a conflict between the calls for course and distance,

other circumstances must usually control.   When the bound-
ary line or monument is found, and are repugnant to calls for
course, distance or quantity, or even all of them, the line or
monument must control.   In this township, however, but one
interior corner was found, and in such a position as to afford
no assistance in the solution of the difficulty.   Had other es-
tablished interior corners been found, they would have aided
materially in arriving at a solution of the difficulty; and from
them other corners could have been satisfactorily established.
And whilst in that case the surplus would probably have been
less equally apportioned among the various owners, still they
would have controlled.

For aught we know, the chain-men may have been careless,
or the surveyor may have been negligent in adjusting his com-
pass, and the difference called for in the field notes thus pro-
duced.   If the lines running north are traced with an accurate
compass, it is not probable that a deflected line could be pro-
duced.   It would have been, like that run by the commis-
sioners, very nearly a direct line from a corner on the south,
to the corresponding corner on the north line of the township.
No variation being called for from a true line, if the call is
changed, a direct line follows as the inevitable result.

It is also urged, that, inasmuch as it appears that there is a
break or deflection in the line bounding the township on the
east, the commissioners have disregarded the provision of
the decree requiring the interior lines to be parallel with the
exterior lines of the township, unless the original field notes
call for a variation from a parallel line, in which case the line
shall be run according to the variation called for by the field
notes.   We have then a deflected line on the east, although a
straight line is called for on the east and west of the sections,
one mile west of the township line.   Then does not this call
of the field notes for a true north line vary from the deflected
township line, and how could the commissioners have complied
with this requirement of the decree, except by running direct
lines for the west boundary of the various sections?   It would
seem that they have complied strictly with the decree in this

requirement, and to have deflected these interior lines would have violated the decree.

It is contended that the plan of survey, urged by appellants, would have produced a more equal distribution of the surplus among all of the sections, than has resulted from the survey made by the commissioners. Even if this were conceded, and it may be true to a limited extent, still it does not seem to have been required by the decree under which the commissioners acted, and with which they have complied, certainly as nearly as they would have done by departing from parallel lines, as required by the decree and by adopting deflected lines, contended for by appellants. Each owner has, by the survey reported to the court, all of the land which he purchased, and it is believed more, and if so, no one is wronged.

If the mode contended for by appellants had been pursued, it would have produced very crooked lines, and have occasioned great inconvenience, and, in many cases, loss in removing and resetting houses, fences and orchards, as such improvements were no doubt made with reference to direct and not deflected lines. While equal, or rather *pro rata* distribution of such a surplus is highly desirable, yet all other considerations should not be required to yield to it. The survey reported carried out the requirements of the decree, and produced *pro rata* distribution, not precise and entirely accurate it is true, but approximately so, and more nearly so, than was probably done originally by the government. Upon mature consideration of the facts disclosed in the record, we cannot say that equity requires the survey should be set aside, and a new one made. Nor can we say that it departs from the requirements of the decree in any material particular, and hence there is no error for which the decree of the court below should be reversed. It is therefore affirmed.

*Decree affirmed.*

MR. JUSTICE LAWRENCE dissenting.