(No. 28156.—

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* LEHMANN ESTATE, INC., Appellant.

*Opinion filed Nov. 22, 1944—Rehearing denied Jan. 15, 1945.*

URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, JEROME SLADKEY, and GEORGE P. NOVAK, of counsel,) all of Chicago, for appellant.

GEORGE A. BASTA, and FRANK S. RIGHEIMER, both of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The Forest Preserve District of Cook county, on February 11, 1942, filed its petition in eminent domain in the circuit court of that county for the condemnation of certain vacant land owned by appellant, located within the village limits of Melrose Park. The jury viewed the premises and returned a verdict fixing the compensation to be paid for the property at $7600. Judgment was rendered on the verdict and appellant prosecutes this appeal.

Appellant contends that the description of the property in the petition is so inaccurate, insufficient and defective that the proceedings should have been dismissed. The land sought to be acquired was described in the petition as "That part lying East of the East line of First Avenue of Lots 2, 3, 5, and 6 (except that part conveyed to the Forest Preserve District by Warranty Deed dated February 24,

1917, and recorded on February 27, 1917, as document 6056317 and except the Railroad) in Guenther Amling and Weiss Subdivision of the South half of the North West Quarter and the West half of the South half of the North East Quarter of Section 2, Township 39 North, Range 12, East of the 3rd P. M. in Cook County, Illinois." It is alleged that this description is defective and insufficient because there is no reference in the deed mentioned to said lots 2, 3, 5, and 6, and it cannot therefore be determined what part of said lots is included and what part excluded in the description in the petition, and further that such description is defective because it refers to another document not attached to the petition. The answer of the appellee to these objections is that they were not made in the circuit court, and an examination of the record shows that this is true. The objection made in the circuit court to the description was based entirely on a conflict or discrepancy between the course and the distance given in two calls contained in the description of the property conveyed by the deed referred to in the petition, which two calls established the eastern boundary line of the property sought to be condemned; and any question of the insufficiency of said description in the petition because of reference therein to another instrument or because said instrument referred to said nothing concerning lots 2, 3, 5 and 6 was not mentioned in that connection. These objections to the sufficiency of the description appear in appellant's brief, but not in the record. Since they were not made on the trial, they cannot be made for the first time in this court.

The deed to which reference is made in the petition is a deed from the Lehmann heirs to the Forest Preserve District, conveying lands of the Lehmann estate. The eastern boundary line of the land sought to be condemned is shown by the description in the petition to be a line described in said deed as beginning at a point in the south

line of the northeast quarter of said section 2, 95.9 feet east of the center of said section and running thence north 23 degrees, 55 minutes east, 1372.6 feet to a point in the center line of the right of way of the Wisconsin Central Railway Company. The attack upon the description in the lower court was based wholly upon the undisputed repugnancy between the above-stated course and the distance of said eastern boundary line. It is conceded that both of them cannot be correct. If, as appellee has assumed, the course is correct, and the distance is to be ignored, the area of the tract sought to be condemned is approximately 9½ acres. If, as appellant contends, the distance should be followed and the course rejected, the area is 10½ acres. It is necessary that the property to be condemned be described in the petition (Ill. Rev. Stat. 1943, chap. 47, par. 2,) with reasonable certainty. (*Chicago, Ottawa & Peoria Railway Co.* v. *Rausch,* 245 Ill. 477.) The question here presented is whether the tract of land sought to be taken is described with reasonable certainty when the course and distance of its eastern boundary line cannot be reconciled; and this leads to the further question whether, in this instance, the distance given must yield to the course. If these questions can be answered affirmatively, then the property which appellee is seeking to condemn is described with sufficient certainty.

Appellee called Ernest Bittler and Herman Bremer, surveyors for 29 and 50 years, respectively. Bittler, who is the chief surveyor and engineer for the Forest Preserve District, had made a survey of the land taken and drawn a plat thereof which, over appellant's objection, was admitted in evidence. He testified, and it also appeared from the plat, that in establishing the east line of the property he had followed the course, namely north 23 degrees, 55 minutes east, instead of the distance of 1372.6 feet, and that by using the course given in the deed the length of the east boundary line from a point in the south line of

the northeast quarter of said section 95.9 feet east of the center of said section to the south right-of-way line of the railroad is a distance of 1354.43 feet. He further testified that it is practically 36 feet from the south line of the railroad right of way to the middle of the track, and taking into consideration this fact and the fact that the railroad is on an angle and there would therefore be more distance from the south right-of-way line to the center of the railroad track in following the given course than if the course were swung farther east, the length of the line in question as found by him measured 1392 feet to the center of the track. He testified that he believed that the original surveyor found the distance, the same as the witness, to be 1392 feet by the course, but that in taking his figures from his field book, inadvertently wrote them as 1372 instead of 1392. He stated that when there is a conflict between course and distance, such as the conflict in question in the deed of February 24, 1917, and there is no established occupational line and no fixed monuments at each end of the line, the course and not the distance should control. The engineer Bremer also testified that in differences such as this the general practice among surveyors is to take the course in preference to the distance. In opposition to their testimony, William Thomas and Harry L. Emerson, surveyors for 30 and 40 years, respectively, testified for appellant that the recognized rule among surveyors in case of a conflict between course and distance is to be governed by the distance rather than the course.

A circumstance relied upon by appellee as indicating the correctness of its contention is the ordinance of the Forest Preserve District providing for the purchase of the property acquired from the Lehmann estate by the deed to which reference is made in the description in the condemnation petition. While the line in question is described in the ordinance exactly as in the deed as running "thence north 23 degrees 55 minutes east 1372.6 feet to the center

line of the right of way of the Wisconsin Central Railway Company," there appears in the ordinance, immediately following this description, the further words, which are omitted from the deed, "which is north 43 degrees 35 minutes west 1757 feet from the south line of the northeast quarter of said section 2." Bittler testified that he and Bremer figured the different distances and angles given in the ordinance and that, by using the course for the east boundary line in question, they arrived at a point in the center of the railroad right of way which was 1768.32 feet from the south line of the northeast quarter of the section on the angle of 43 degrees 35 minutes, instead of 1757 feet on said angle as the distance was given in the ordinance, while by using the distance of 1372.6 feet to establish said east boundary line, as appellant contends should be done, the distance from said south line at the angle given was approximately 1707 feet. There was thus, by using the course given in the deed for the line in question, a difference of only 11 feet between the location of the northern terminus of said line as given in the ordinance as against a 50-foot difference in using the stated dimension of said line.

It was proved by appellee and not disputed by appellant that, at the time of the purchase by the Forest Preserve District from the Lehmanns in 1917 of the property conveyed by the deed referred to, the description of the land to be conveyed was furnished and also the deed was prepared by the Lehmanns. A familiar rule of construction adopted by this court requires that where there are two descriptions in a deed of the land conveyed and they do not coincide, the deed shall be taken most favorably for the grantee. (*Decker* v. *Stansberry,* 249 Ill. 487; *Peoria and Pekin Union Railway Co.* v. *Tamplin,* 156 Ill. 285; *Casler* v. *Byers,* 129 Ill. 657; *Boone* v. *Clark,* 129 Ill. 466; *Sharp* v. *Thompson,* 100 Ill. 447; *Cottingham* v. *Parr,* 93 Ill. 233.) And, although the rule is subject to varia-

tion, according to the manifest intention of the parties and the circumstances of the case, distances are considered as being more uncertain than courses and must yield to courses where both cannot be followed in determining the location of a boundary line. (8 Am. Jur. p. 789-790; 4 R. C. L. 108; 11 Corpus Juris Secundum 628.) There is no universal rule preferring one to the other, regardless of the circumstances of the particular case, (*Preston's heirs* v. *Bowman*, 6 Wheaton, 581, 5 L. ed. 336; *McClintock* v. *Rogers*, 11 Ill. 279;) but the general rule is, as stated by the Supreme Court of the United States in the case of *United States* v. *State Investment Co.* 264 U. S. 206, 44 S. Ct. 289, that in matters of boundaries calls for courses prevail over those for distances. It was also announced by this court in the case of *Colvin* v. *Fell*, 40 Ill. 418, that where course and distance are repugnant and fail to correspond, the call of the former cannot be more imperative than the latter, but the presumption is rather in favor of the course than of the distance, as chainmen are more liable to inaccuracy in measurement than the surveyor in the course.

Appellant argues strongly against applying the rule that in case of conflict in description the course must control and not the distance. It contends that the rule is not universal but subject to the exception that either shall control according to the manifest intention of the parties and the circumstances of the case. The general correctness of this proposition need not be controverted. The principal difficulty with this argument to avail appellant is that there have been pointed out no facts and circumstances, and upon a diligent search of the record we can find none, indicating that the intention of the parties to the deed was that the distance and not the course should control in the location of the line in question. We are convinced that under the law applicable to the facts and circumstances the location of the line in controversy is controlled by the

course stated in the deed, and that there is no merit in appellant's contention that the petition filed in this case fails to describe with reasonable certainty the property sought to be condemned.

The property sought to be condemned is a triangular piece of vacant land, containing approximately 9½ acres. The tract is about 500 feet wide at the north end and tapers down to 37.9 feet at the south end. On the west it has a frontage of 1320 feet on First avenue, a 100-foot highway with a 40-foot pavement. The Soo Line railroad cuts across the northeast corner of the property. There is a frontage on the railroad of 106.67 feet. The east boundary line, which forms the triangle, is a line 1354.43 feet in length, running in a northeasterly direction, the course and location of which has been hereinbefore discussed. The Forest Preserve District in 1917, by the deed hereinabove mentioned, acquired the property to the east along the Des Plaines river and to the south by purchase from the Lehmanns. Immediately adjoining the property on the north is a tract of 30 acres, a part of which is used for the dumping of ashes and refuse other than garbage. West of the property across First avenue and to the north are the county fair grounds, which have not been used to any extent for the past five years, but which were formerly used for horse races, midget automobile races and agricultural exhibitions. To the southwest of the property in question, separated from it by First avenue, is approximately 269 acres, all belonging to the Lehmann estate, used as a farm, of which the property being condemned is a part.

Appellee called as witnesses, Donald T. Morrison, an expert real-estate broker and appraiser, and Grover C. Elmore, a builder and real-estate broker. Morrison testified that in his opinion the property to be taken had a fair cash market value on February 11, 1942, of $600 an acre, or $5700. Elmore estimated it at $5500 or about

$580 an acre. In rebuttal, appellee called William Kaplan, a real-estate broker, who valued the property at $500 an acre. Appellant presented the testimony of three real-estate brokers, Edmund F. Lindop, G. W. Kunstman, and H. E. Olson, who placed the fair cash market value on February 11, 1942, at $3000 an acre, which for the 9½ acres would amount to $28,500. Andy Frenzel, the president of the village board of Melrose Park, also testified for appellant. He gave no valuation of the property, but said that in his opinion the highest and best use of the property was anything but residential.

Both the constitution and the statute require just compensation for property taken by eminent domain. (Const. 1870, art. II, sec. 13; Ill. Rev. Stat. 1943, chap. 47, par. 1.) Just compensation means such a sum of money as is the equivalent of the value of the property. (*City of Chicago* v. *Cunnea,* 329 Ill. 288.) Nothing short of the amount of money necessary to put the owner in as good condition financially as he was with the ownership of the property will satisfy the constitutional and statutory requirement of just compensation. (*City of Chicago* v. *Koff,* 341 Ill. 520.) The measure of compensation for the land taken must be its fair cash market value for the highest and best use to which it is available, even if, at the time of filing the petition, the land is not being put to such use. (*Department of Public Works and Buildings* v. *Barton,* 371 Ill. 11.) There are certain exceptions to this rule where the property is of such a nature and applied to such a special use that it cannot have a market value, as, for example, a church, college, or club house. (*City of Chicago* v. *Farwell,* 286 Ill. 415.) But these exceptions need not be noticed here, as they have no application to the case at bar. Appellee's witnesses testified that the highest and best use of the property was for residential purposes. The testimony of appellant's witnesses was that its highest and best use was for industrial purposes. Appellant's witnesses

placed upon the property a value of five times that testified to by the witnesses for appellee. This wide difference in the testimony of the two sets of witnesses as to the value of the property was, unquestionably, due to their difference of opinion as to what was the highest and best use to which the property was available.

Contention is made that the testimony of appellee's witnesses to the effect that the highest and best use of appellant's property was for residential purposes was so inherently improbable that it should have been stricken and not permitted to go to the jury. The witness Morrison had been a real-estate broker and appraiser in Cook county for 27 years, doing a general brokerage business in residential land and industrial property. He had bought and subdivided acreage and had built houses and industrial buildings. He was appraiser for the Massachusetts Mutual Life Insurance Company, the North American Union Insurance Company, and a number of loan associations. He had appraised a number of properties and done considerable work for the United States government, and was the author of a work on real estate entitled "Morrison Home Study Plan." The witness Elmore had been a builder and real-estate broker for 30 years. He had specialized in buying tracts, subdividing them and building houses in the suburbs of Chicago, and had bought and sold about 30,000 acres. He also was an author who had written on real-estate matters and the subdividing of property. These witnesses were entirely familiar with appellant's property and the neighborhood where it was located. They testified in detail and at length as to the situation of the property and its surroundings, and explained fully the elements which they considered and the reasons by which they were governed in forming their opinion that the highest and best use of the property was for residential purposes. The witness Kaplan testified that he had been engaged as a real-estate broker for 35 years, operating in

Chicago and its outlying suburbs; that for over 30 years he had specialized in industrial property; that he had represented many large industries in the purchase of industrial property and had bought over one hundred million dollars worth of property. He also stated that in his opinion the property was best suited for residential and not for industrial purposes, and enumerated the various reasons that influenced him in such belief. Appellant contends this witness was not qualified to give an opinion because he stated that he had known the property being condemned since he had been asked to be a witness, some 6 to 11 months before the trial, which, as the trial was in November, 1943, would be from 7 to 9 months subsequent to the filing of the petition herein. He testified, however, that he had known the general neighborhood of the property for a number of years and had passed this particular property a number of times during the past 6 or 7 years; that there had been no change in the surroundings with reference to the construction of buildings or the occupancy of any property and no change in this property during the past 3 or 4 years. He further testified that, in addition to his general knowledge of the property, its neighborhood and surroundings, he made an additional investigation of the same upon being asked to testify in the case. Since Kaplan's testimony showed that he was familiar with the conditions, location and surroundings of the property as of February 11, 1942, and that he was, unquestionably, qualified to testify to the suitability of property for industrial purposes, the trial court did not abuse its discretion in allowing him to testify. A careful study of the testimony of appellee's witnesses convinces us that there is no merit to the contention that their evidence that the highest and best use of the property was for residential purposes was so inherently improbable that it should have been excluded from the jury. Upon the question of whether the highest and best

use was for residential or industrial purposes the witnesses differed, and the question was therefore properly left to the jury. (*Illinois Light and Power Co.* v. *Bedard,* 343 Ill. 618; *River Park District* v. *Brand,* 327 Ill. 294.) It is a well-settled rule of this court that in condemnation proceedings where the evidence is conflicting and the jury have viewed the premises, a verdict fixing the amount of the compensation within the range of the evidence will not be disturbed. *Illinois Light and Power Co.* v. *Bedard,* 343 Ill. 618.

It is next alleged as error that the court admitted incompetent testimony of Otto H. Amling that, 4 years and 6 months before the petition was filed in this case, the Amling Company, of which he was president, purchased for $1962 a parcel of land consisting of 4.9 acres, adjoining property already owned by the company and about a half mile north of the land in this case. He testified the land he bought had a frontage of 177 feet on North avenue and substantially the same frontage on the Soo Line railroad; that the entire property of his company covers approximately 120 acres and is used in one enterprise in the florist and agricultural business; that they grow trees, shrubs and cut flowers for market; that they ship most of their products by truck to Chicago, but sell a part on the premises; that they have about 12 acres of greenhouses; that they also use their premises for the raising of hogs, poultry and chickens and the growing of vegetables and farm crops. He testified that Peter Sturrus, from whom the property was purchased, was a competitor of theirs in the flower business, who subsequently sold his business because he could not make satisfactory arrangements with the owners from whom he rented the greenhouses he operated; that before Sturrus owned the 4.9 acres it was used for truck gardening, and was afterward used by Sturris for that purpose to a limited extent. Appellant insists this sale was not admissible in

evidence ·because, as the theory of appellee and all of its testimony up to that time had been that the highest and best use of the property being taken was for residential purposes, the Amling sale, being predicated upon the value of the property for agricultural use and contrary to appellee's own theory of the case, was in no way indicative of the value of the tract in question. The reason for admitting evidence of actual sales of land is that they tend to show the value of the land being taken, and unless there is similarity in location, quality and other elements of value, and a sale is near enough in time to furnish a guide to value, a sale cannot be proved. (*East Side Levee and Sanitary Dist.* v. *Jerome,* 306 Ill. 577.) The evidence shows that the 4.9 acres sold to Amling is in the same neighborhood as the property in question. The Amling tract is located on North avenue, was being used for truck gardening at the time of the sale, and has a frontage on the Soo Line railroad of 177 feet. The property in question, which is a half mile south, is located on First avenue, has a frontage on the Soo Line railroad of 106.67 feet, and at the time the condemnation petition was filed was being used by appellant as a part of a farm of 269 acres. Both tracts were vacant and unimproved. The fact that the land in question is within the corporate limits of Melrose Park does not destroy its similarity to the Amling tract. No general rule can be laid down regarding the degree of similarity which must exist between the property sold and that condemned to make evidence of such sale admissible. (*Forest Preserve Dist.* v. *Draper,* 387 Ill. 149; *Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391.) Similar does not mean identical, but having a resemblance; and property may be similar in the sense in which the word is here used though each possesses various points of difference. As no two pieces of property are exactly alike, the admission of proof of any particular sale must necessarily rest in the discretion of the trial court, which discretion is

limited to deciding whether the property is similar in quality, nature, improvements or other characteristics, and does not embrace deciding whether evidence shall be admitted of sales having no tendency to prove the value of the land being taken. (*Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11.) The Amling tract was in the same neighborhood, and was similar in nature and surroundings as well as the use to which it was devoted. The admissibility of proof of sales depends upon the similarity of the property sold and not upon the use for which the property was purchased.

It is also contended that proof of this sale was error because of its remoteness in time to the filing of the petition and the subsequent general change in circumstances from the date of the same to the date when the petition was filed. Although it does not appear from the abstract, a search of the record reveals that no such objections were interposed when this evidence was offered in the trial court. The only objection voiced by appellant at that time was that it was agricultural property sold for agricultural purposes. When the objection to the evidence was made in the trial court appellant did not claim that the sale was so remote in time or that there had since been such a general change in circumstances as to warrant the exclusion of this evidence. A specific objection to evidence, based solely on a particular point, is a waiver of objections on all other points not specified or relied on. (*Village of Prairie du Rocher* v. *Schoening-Koenigsmark Milling Co.* 248 Ill. 57.) A party who seeks to exclude a piece of evidence should be explicit, and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. After the evidence was closed, a motion was made to strike out the testimony of this sale because it was not a free and open sale, because of the difference in time between the date of the sale and the filing of the petition, and because of the

change in the real-estate market during that time. These objections to the proof of the sale were then too late. An objection to testimony, to be availed of in this court, must be raised in apt time, when the evidence is introduced. *Goldberg* v. *Capitol Freight Lines, Ltd.*, 382 Ill. 283; *Board of Trade Telegraph Co.* v. *Blume,* 176 Ill. 247.

After both sides had rested and the evidence had all been closed, appellant moved the court for leave to put William Bussert upon the stand as a witness and to introduce in evidence the Cook county zoning ordinance. Appellant assigned as the reason for the request that the purpose of this additional evidence was to rebut and impeach the Amling sale and the testimony of the witness Kaplan. Counsel for appellant stated that he had received information that Peter Sturrus by whom the sale was made to Amling had formerly been an employee of the Amling Company and that there had been friction between Sturrus and his employer; and counsel desired to examine Bussert, who was the secretary of the company, to ascertain from him what he knew about the transaction. The introduction in evidence of the zoning ordinance was desired for the purpose of attacking the testimony of Kaplan concerning the zoning of property northwest of the land being taken. Kaplan had testified that he did not know the zoning of this tract, but did not believe it was industrial. The trial court refused to reopen the case and allow this additional evidence to be introduced, and this ruling of the court is assigned as error. The matter of the order of proof and allowing a case to be opened up for taking further evidence rests in the sound judicial discretion of the court and should not be interfered with except for clear abuse. (*Rosehill Cemetery Co.* v. *City of Chicago,* 352 Ill. 11.) There is nothing in the record to show that such discretion was improperly used, much less abused. Counsel for appellant had known about this sale since 1939, and had ample opportunity to investigate the

circumstances of the sale previous to the trial and to produce at the trial any witnesses he desired to question concerning the transaction. Moreover, even if such a relationship existed or if there was friction between Sturrus and Amling, these facts would be no indication that the sale was made under compulsion. Appellant also had ample opportunity during the trial to introduce the zoning ordinance if counsel had thought it necessary. Kaplan had not testified that the property northwest of the land was not zoned industrial. He testified he did not know how it was zoned, but did not believe it was industrial. The trial court properly refused to reopen the case.

We find no error in the record, and the judgment of the circuit court is affirmed. *Judgment affirmed.*