(No. 48356.–)

CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant, v. LAWRENCE T. WESTERVELT, Appellee.

*Opinion filed May 20, 1977.—Rehearing denied Oct. 3, 1977.*

208

Harris & Harris, of Macomb, and Nafziger & Otten, of Springfield (Edwin Harris, Elmer Nafziger, and William R. Harris, of counsel), for appellant.

Hartzell, Glidden & Tucker, of Carthage (Franklin M. Hartzell and Stanley L. Tucker, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This controversy concerns the propriety of the evidentiary consideration of the unsightliness of a utility line and its effect on the market value of land as a properly compensable element of damages in an eminent domain action.

Plaintiff, Central Illinois Public Service Company (CIPS), filed a petition on June 29, 1972, in the circuit court of McDonough County to acquire, by eminent domain, 13 parcels of real estate as a right-of-way for the construction, operation and maintenance of a 138-kilovolt multigrounded transmission line. Two of the parcels were involved in the trial of this case but only one parcel, which the defendant, Lawrence T. Westervelt, owns, is involved in this appeal.

When CIPS instituted the eminent domain action to acquire the perpetual easement to construct and to operate and maintain the high voltage electric transmission line across land owned by Westervelt, the latter filed a cross-petition claiming damage to the remainder of his property not within the easement strip. CIPS denied any damage alleged in the cross-petition. The jury returned a verdict giving Westervelt $3 for that portion of the easement strip to be occupied by the structures; $8,187.70 for the remaining portion of the easement strip; and nothing for Westervelt's property outside the easement strip. Westervelt filed a post-trial motion on January 18,

1973, that requested a new trial. Over a year later, a mistrial was declared.

A second jury trial was held on April 29, 1974, and the jury returned a verdict awarding Westervelt $6.60 for damage to that portion of the easement strip to be occupied by structures; $3,780 for the remainder of the easement strip; and $8,750 for damage to land outside the easement. In the course of this trial, the court barred Westervelt's evidence as to the unsightliness of the proposed improvement, *i.e.,* the description of the structure and the appearance of the line. The court maintained that the unsightly appearance of the line is not a proper element to be considered because it is speculative and uncertain in nature when determining damages or reduction in the market value of the property. Judgment was entered upon the verdict of the jury and Westervelt appealed.

The appellate court (*Central Illinois Public Service Co. v. Westervelt* (1976), 35 Ill. App. 3d 777) found that the trial court's refusal to admit evidence of the unsightliness of the structures to be constructed by CIPS, as an element of damage, was error; it then reversed and remanded the cause for a new trial. Also the appellate court, holding that Westervelt did not fall within the applicable statutory provision for attorney fees in an eminent domain action (Ill. Rev. Stat. 1973, ch. 47, par. 10), found no merit in his claim for attorney fees for the first trial because a mistrial had been granted.

The issue here is whether evidence of unsightliness of a utility line and its effect on the market value of land not taken should be properly considered as a compensable element in an eminent domain action. The record shows that the land owned by Westervelt, the one parcel at issue, is a semiwooded area of 240 acres lying between two roads, one on the east and one on the west. On the east road there are numerous homes. On the west road

numerous small tracts have been sold for homesites. The area is a popular residential area because of its natural beauty, due largely to an abundance of trees, and because of its proximity to Macomb, Illinois. The homesites, within the region of the Westervelt property, vary from one to five acres and are occupied by university employees or others who work in McDonough County.

In *Board of Trade Telegraph Co. v. Darst* (1901), 192 Ill. 47, this court recognized unsightliness as a *bona fide* element of damage to the value of property in eminent domain suits. Later, in *County Board of School Trustees v. Elliott* (1958), 14 Ill. 2d 440, 446, the court noted that physical disturbance need not be tangible but need only be a disturbance of a right enjoyed in connection with the property. It was also said in *Illinois Iowa Power Co. v. Rhein* (1938), 369 Ill. 584, 596:

> " 'The physical disturbance of a right which a landowner enjoys in connection with his property,' as defined by this court, does not mean that it is confined entirely to the location of a physical structure, but if a 'right to enjoy' it is disturbed by physical means consisting of structures or actual taking, or by originating results directly affecting the land not taken, proof of such disturbance and the resulting damages may be shown by the landowners. This court has not restricted the proof of damages to lands within the easement."

This court has considered proper evidence of damages for an unsightly spoil bank, the waste material from excavations, where the unsightliness was injurious to the property *not* taken by eminent domain and the aesthetic detriment was shown to have reduced the market value of the property. (*Sanitary District v. Baumbach* (1915), 270 Ill. 128.) In *Baumbach,* testimony that spoil banks would detrimentally affect the sale of lands not taken, but to be

used for residential purposes, was held admissible.

"That a high and unsightly spoil bank located so near the property not taken in both tracts would injure the sale of these tracts if subdivided for residence and business purposes is apparent, hence it was proper for the witnesses to take the spoil banks into consideration in estimating the damages to land not taken. The extent to which the land not taken would be injured by the construction of the canal in the manner disclosed by the proof *is largely a matter of opinion,* and was a proper subject upon which to take the testimony of witnesses whose experience *qualified* them to express such an opinion.

***[I] f the spoil banks operated to obstruct the view and obstruct light and air from any portion of the lands not taken of either tract it was proper to prove this as an element of damages." (Emphasis added.) *Sanitary District v. Baumbach* (1915), 270 Ill. 128, 133-34.

In assessing damages the jury is empowered to determine the "highest and best use" of the land. (*Sanitary District v. Baumbach* (1915), 270 Ill. 128, 132.) In this case there is clear evidence that the highest and best use of the Westervelt land is for residential homesites. Therefore, it is not controlling that the structures, to be built on the easement strip, are unsightly to Westervelt. Rather, as the appellate court found, it is the effect of the unsightliness on prospective buyers of residential lots which is relevant. If the construction on the easement strip is aesthetically distasteful or unsightly to potential buyers, the market value of the land is thereby reduced. The nature of the construction in this case—a 138-kilovolt multiground transmission line—damages the market value of a potential residential area.

For these reasons we hold that the appellate court was

correct in its conclusion that the trial court's refusal to admit evidence of unsightliness of the structures to be constructed by CIPS as an element of damage was in error.

We find further that the appellate court correctly concluded that the defendant is not entitled to attorney fees because he did not fall under the provisions for attorney fees in an eminent domain action. Ill. Rev. Stat. 1973, ch. 47, par. 10.

Therefore, the judgment of the appellate court is affirmed.

*Judgment affirmed.*